**ARMSTRONG CORK COMPANY,**
Appellant,

v.

**John T. LYONS and Ruth E. Lyons, Co-Partners doing business as Lyons Utility Company, Appellees.**

**No. 18060.**

United States Court of Appeals
Eighth Circuit.

Sept. 21, 1966.

Armin M. Johnson, Minneapolis, Minn., for appellant; John D. French and Lawrence C. Brown, Minneapolis, Minn., John G. Buchanan, Jr., and Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., and Faegre & Benson, Minneapolis, Minn., on the brief.

Harry H. Peterson, Minneapolis, Minn., for appellees.

Before VAN OOSTERHOUT, MAT-THES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

John T. Lyons and Ruth E. Lyons, d/b/a Lyons Utility Company, appellees (hereafter Lyons), brought this treble damage action for alleged violations of the antitrust laws [1] against Armstrong Cork Company (hereinafter Armstrong) and Carpenter Paper Company (hereinafter Carpenter), alleging that Armstrong and Carpenter unlawfully combined and conspired with each other in restraint of trade for the purpose of creating a monopoly for the sale of Armstrong's products in an area served by Lyons, an Armstrong wholesale dealer, and further that Armstrong and Carpenter conspired to fix and maintain prices in the trade area to the damage of Lyons. [2]

On November 2, 1954, Armstrong and Lyons entered into a non-exclusive contract providing that Lyons sell at wholesale Armstrong's "lumber dealer products." The agreement also provided that Armstrong would furnish to Lyons, upon Lyons' request, Armstrong's suggested retail prices for Armstrong's products. Lyons' trade area included the Minneapolis-St. Paul area as well as parts of several nearby states. In 1959, Carpenter was also made an Armstrong distributor in the Minneapolis-St. Paul area. Subsequent to becoming Lyons' competitor, Carpenter inaugurated a policy of free delivery service on Armstrong's products to its customers in the Twin City territory. Lyons responded by complaining to no avail to Armstrong and announcing by letter a 5% discount on Armstrong's products which in turn brought complaints from Carpenter. During this period representatives of Armstrong were calling on both dealers, apparently in an attempt to pacify them, but without success. Shortly thereafter, Lyons wrote another letter to its customers withdrawing the discount, seemingly under the mistaken impression that Carpenter would withdraw its free delivery service. Lyons testified that its business increased after offering the discount and continued to prosper for some months thereafter. While Lyons had previously been a good dealer for Armstrong he was seventy years old and operated his business without any sales organization and had not achieved sales quotas Armstrong thought reasonable. On January 5, 1961, Armstrong terminated its agreement with Lyons, according to a valid termination clause in the original contract.

Suit was filed and the case proceeded to trial. At the conclusion of plaintiff's evidence, both Armstrong and Carpenter filed motions to dismiss. The trial court granted Carpenter's motion because there was no evidence of collusion or conspiracy between Carpenter and Armstrong. Armstrong's motion was denied. Despite Armstrong's protests, the court proceeded with the trial. Upon conclusion of all evidence, Armstrong's renewed motion to dismiss was also denied.

Along with its answer, Armstrong alleged a counterclaim for goods sold and delivered. Lyons conceded this indebtedness. After the jury's verdict awarding damages to Lyons, Armstrong's timely motion for judgment n. o. v. was denied. Judgment was entered for plaintiff in

1. 15 U.S.C.A. §§ 1–14.

2. The Complaint alleged:
   "That on or about October 1, 1960, and thereafter the defendants Armstrong and Carpenter have conspired, combined and concentrated together in restraint of trade for the purpose of creating a monopoly for the sale of Armstrong's products in the area served by Lyons and for the purpose and with the intent of injuring and destroying the trade and business of Lyons; that Armstrong and Carpenter have agreed and conspired so as to fix prices and to maintain higher prices and to entirely destroy the business of Lyons in the products of Armstrong and to maintain higher prices of Armstrong's products than the regular fair market price thereof in the area served by Lyons and for the purpose of depriving the plaintiff Lyons and Lyons' dealers in the said area from the profits and gains in the business built up and operated by the plaintiffs Lyons."

treble the jury's award less the amount of the admitted counterclaim. We reverse.

Lyons' complaint was based solely on an alleged combination or conspiracy between Armstrong and Carpenter. This theory was not altered at trial. Thus, the verdict of the jury was based on a theory other than that alleged in the pleadings. The District Court, however, was of the opinion that the evidence might possibly have indicated that Lyons and Armstrong had conspired, contracted or combined within the meaning of the Sherman Act (15 U.S.C.A. § 1). Nevertheless, this specific theory was not in any fashion pointed out in the court's instructions. The instructions were very broad but without specific objections. Therefore, Armstrong was placed in an untenable position by having to defend against an issue not suggested by the pleadings or illuminated by the evidence. Additionally, the jury returned a verdict without specific guiding instructions on a recoverable theory that only the court had detected or perceived. The District Court had this to say in its unpublished memorandum:

"The original complaint alleged that Armstrong and Carpenter had conspired to violate the antitrust laws. This theory was never really altered at the trial, even after Carpenter had been dismissed because of the complete failure of the evidence to show any violation of the law on its part. The plaintiff wanted the jury to consider whether there had been violation of 15 U.S.C. §§ 1, 2, 13 and 14, but the Court ruled that only 15 U.S.C. § 1 could have any applicability to the evidence presented. This section, of course, requires a 'conspiracy' or 'contract' or 'combination.' The possibility that Lyons and Armstrong may have been the parties conspiring, contracting or combining within the meaning of the statute was never more than mentioned in passing. Although this Court considered its instructions broad enough to cover that possibility, no attempt was made to point it out. The

defendant has not, however, sought a new trial. Therefore, since the verdict is within the evidence and is not contrary to the instructions given, the defendant's motion for judgment N.O.V. should be denied. The plaintiffs should consider the advisability of amending the pleadings to conform to the evidence."

The issue which the District Court seemed to think accrued was certainly not voluntarily litigated by Armstrong, which had not been put on notice of any other issues save the combination and conspiracy alleged in the complaint. The principle governing the prohibition of placing Armstrong in such an unfair position is well stated by the late Judge Sanborn in Sylvan Beach v. Koch, 140 F.2d 852, 861–862 (8th Cir. 1944):

"A court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings. (Citing cases.) Unless all parties in interest are in court and have voluntarily litigated some issue not within the pleadings, the court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded. A party is no more entitled to recover upon a claim not pleaded than he is to recover upon a claim pleaded but not proved.

"The foregoing rules are all fundamental and state nothing more than the essentials of due process and of fair play. They assure to every person his day in court before judgment is pronounced against him. They cannot be circumvented by allowing amendments to pleadings to change a cause of action after judgment or by giving notice of the entry of judgment or by entertaining motions to vacate a judgment after it has been entered."

A case analogous in principle is United States v. 47 Bottles, More or Less, Etc., 320 F.2d 564, 573–574 (3rd Cir. 1963). Chief Judge Biggs, in discussing

the modern and liberal rules, observed that they are not unlimited and cannot be exercised in such a manner as to result in substantial prejudice to a party. Judge Biggs said:

"We think that in the case at bar the trial judge did not properly exercise his legal discretion in granting leave to amend the prayer for relief at such a late stage in the proceedings. Assuming *arguendo* that the court below had jurisdiction over the person of the claimant so as to have the power to grant injunctive *in personam* relief, an issue we need not and therefore do not decide, we nonetheless think it unfair and substantially prejudicial to permit the injection of a new and different prayer for relief after trial at the very end of the case as was allowed here. But for the brief oral argument on the motion, Jenasol had no opportunity to raise and assert, through evidence or otherwise, equitable considerations by way of defense to an injunction or other possible mitigating factors."

In Gallon v. Lloyd-Thomas Co., 264 F. 2d 821, 77 A.L.R.2d 417 (8th Cir. 1959), this court held that where a case was not tried on the theory that fraud was practiced by an employer for the purpose of obtaining an employment contract, evidence going to other issues, even if incidentally touching some elements of fraud, could not be used to support a proposed amended petition which was based on fraud and which was sought to be filed after all of the evidence was in. Rejection of the amended petition was not an abuse of discretion. See footnote 3, 264 F.2d 825, wherein Judge Matthes cited Professor Moore as well as cases in support of the court's conclusion. Also, see and compare Simms v. Andrews, 118 F.2d 803, 807 (10th Cir. 1941).

■ It will be noted that the District Court suggested that Lyons consider the advisability of amending the pleadings to conform to the evidence. This was long after the conclusion of the trial and return of the jury's verdict and subsequent to Armstrong's motion n. o. v. It is settled law that a plaintiff cannot bring his action and try his case on one theory and recover on another.[3]

■ Obviously, the possibility of a recoverable theory based on Lyons and Armstrong's being the conspiring parties did not occur to anyone but the court. Under such circumstances, the jury should not have been permitted to consider such theory unless Armstrong be given the opportunity to prepare for and defend against it. The District Court could have required an amendment to the complaint, but, under circumstances as existed here, it should have

---

3. "Plaintiff cannot try his case on one theory and then, after finding himself unable to prove it, shift to another." 71 C.J.S. Pleading § 92 (1951).

The following quotation is from 41 Am. Jur.Pleading § 374 (1942):

"The plaintiff in his proof must ordinarily be confined to the cause of action set forth in his declaration or complaint, and must recover, if at all, on the case made therein. Except for authority given by statute to the court to cure variances by directing an amendment of the pleading to conform to the proof, the code system of pleading and other practice provisions do not, as a rule, affect the principle that the allegations and proof must correspond. Under modern practice, as well as at common law, a plaintiff cannot sue on one cause of action and recover on another. Any other rule would lead to interminable surprises and consequent injustice."

Professor Moore in 3 Moore, Federal Practice ¶ 15.13(2), at 991–92 (2d ed. 1964), states:

"The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried; therefore an amendment after judgment is not permissible which brings in some entirely extrinsic issue or changes the theory on which the case was actually tried, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment. This principle is sound, since it cannot be fairly said that there is any implied consent to try an issue where the parties do not squarely recognize it as an issue in the trial."

**210**

then granted Armstrong whatever reasonable time as would have been necessary to properly prepare for and make its defense to the new issue.

For the reasons herein stated, the judgment of the District Court is vacated. The District Court is instructed to enter judgment for Armstrong on its counterclaim for the amount admittedly owed and to grant a new trial with Lyons being permitted to amend its complaint or otherwise be required by pretrial procedures to state its theory for recovery with specificity, and a reasonable time be granted Armstrong to interpose any available defense.

It is so ordered.