**Alfred CRAWFORD; Daniel Carrasco; Jerry Parker, et al., Plaintiffs–Appellees,**

v.

**Russell S. GOULD; William Mayer, et al., Defendants–Appellants (Two Cases).**

Nos. 93–17303, 93–17305.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1995.

Decided June 7, 1995.

As Amended Aug. 25, 1995.

Barbara Haukedalen, Deputy Atty. Gen., Sacramento, CA, for defendants-appellants.

Eric R. Gelber, Protection & Advocacy, Sacramento, CA, for plaintiffs-appellees.

Before: TANG, SCHROEDER and TROTT, Circuit Judges.

Opinion by Judge TANG; Concurrence by Judge TROTT.

TANG, Senior Circuit Judge:

The named plaintiffs in this action filed suit on behalf of a class consisting of all current and future patients involuntarily committed to California state psychiatric hospitals.[1] The plaintiffs challenge the defendants' practice of deducting patients' money, including Social Security benefits, from the personal deposit accounts maintained for each patient, to reimburse hospitals for the cost of patient care and maintenance.

Defendants, the Secretary of the California Health and Welfare Agency et al. ("California"), appeal from the district court judgment entered after a hearing on cross motions for summary judgment. The district court enjoined California's practice of withdrawing patients' Social Security benefits without their consent. The court also enjoined deduction of any funds from patients' accounts without adequate notice, including notice that Social Security benefits and Veterans benefits cannot be used to pay the cost of care without a patient's consent.

The main issue on appeal is whether 42 U.S.C. § 407(a) preempts the procedure whereby California deducts Social Security benefits from patients' hospital trust accounts to pay for the cost of patient care. We conclude that the federal statute does preempt California's practice. We affirm the district court's judgment enjoining Califor-

1. The class is defined as follows:
All current and future patients involuntarily hospitalized in a California state psychiatric hospital who receive funds at the hospital which are deposited in the patient's personal deposit fund at the hospital, and for whom funds on deposit have been or are subject to being applied as payments toward the costs of the patient's care and treatment at the hospital.
All members of the class who receive Social Security benefits for whom the State is not the representative payee are members of a sub-class, which is defined as follows:
All current and future patients involuntarily hospitalized in a California state psychiatric hospital who receive Social Security benefits which are deposited in the patient's personal deposit fund, for whom the State is not the representative payee, and for whom these funds have been or are subject to being applied as payments towards the costs of the patient's care and treatment at the hospital.

nia's practice and requiring that the state provide notice and obtain meaningful consent prior to deducting Social Security benefits. We vacate the judgment with respect to Veterans benefits and we remand for determination of this issue.

Under California law, patients committed to state psychiatric hospitals are liable for the cost of their "care, support, and maintenance." Cal.Welf. & Inst.Code § 7275. Upon commitment, patients receive a "Statement of Financial Liability" informing them of their liability for the cost of services. Thereafter the Client Financial Services branch of the California Department of Developmental Services conducts a financial investigation to determine how much a patient can contribute to the cost of care. Based on this investigation, the Department establishes a monthly billing amount for each patient.

As required by California law, each psychiatric hospital maintains a trust account entitled "patients' personal deposit fund." Cal. Welf. & Inst.Code § 7281. Any funds that patients possess upon admission and any funds they receive while institutionalized are deposited in their names in the personal deposit fund. Funds deposited include patients' federal Social Security Old–Age, Survivors and Disability Insurance benefits, and Veterans Administration benefits. Whenever any patient's total deposits exceed $500, the hospital can apply the excess to the cost of patient care. *Id.*

Shortly after admission, patients are asked to sign the "Authorization for Deposit and Withdrawal." By signing this form patients agree to deposit their money, including Social Security and Veterans benefits, into the personal deposit fund. The form provides:

> I understand that State law requires the deposit into my Personal Deposit Fund of all monies in my possession at the time of my admission to a state hospital ... and any other funds received by or for me during my residence at such a state facility. These funds so deposited may have originated from any private or public

source, including such federal agencies as the Social Security Administration and/or the Veterans Administration.

The form also gives the hospital trust officer authority to make withdrawals from the patient's account:

> Subsequent disbursements from my Personal Deposit Fund may be made by the Trust Officer on my behalf for my care and maintenance, treatment services, clothing, personal purchases and other necessities and incidentals.

The paragraph concludes: "I hereby authorize all such deposits to and withdrawals from my Personal Deposit Fund."

With respect to Social Security and Veterans Administration benefits, the Authorization adds:

> I further understand that federal laws dealing with Social Security or Veterans Administration payments exempt these benefits from legal or equitable claim processes so they will be available for the purpose of assuring my care, maintenance and medical treatment. This Authorization for the use of these benefits is specifically for these stated purposes.

At least five of the six named plaintiffs have either refused to sign the Authorization or have subsequently revoked their authorization.

If a patient refuses to sign the authorization form, California still follows the deposit and withdrawal procedures. Each hospital provides nonconsenting patients with a "Notice of Intended Withdrawal," which informs the patient of the amount the hospital will be withdrawing monthly from the patient's trust account.

Both the Statement of Financial Liability and the Notice of Intended Withdrawal inform patients that they have the right to appeal withdrawals from their hospital accounts. The forms do not set forth information about the appeals process but merely tell patients to contact the trust officer who administers the patients' deposit fund.[2]

---

2. The Statement of Financial Liability provides: Deposited funds in excess of $500.00 may be applied as payment toward the cost of services. A client has the right to appeal this use of funds. The hospital Trust Officer may be con-

tacted for further information or to request an appeal.

The Notice of Intended Withdrawal provides: You have the right to appeal this withdrawal. To do so, contact the Trust Officer.

The plaintiffs filed a class action suit seeking declaratory and injunctive relief. After a hearing on cross-motions for summary judgment, the district court granted partial relief to the plaintiffs. The court enjoined California's practice of withdrawing patients' Social Security benefits without their consent, concluding that the practice is preempted by 42 U.S.C. § 407. The court also determined that the notice California provides prior to withdrawing any funds from patients' accounts violates the procedural requirements of the Due Process Clause. The court enjoined withdrawal without adequate notice and ordered California to inform patients:

a) of the proposed share of cost and the facts on which the determination was made;

b) that the plaintiff has a right to appeal the share of cost determination;

c) a description of the appeal process and procedure; and

d) that certain federal benefits, specifically Social Security benefits and Veterans benefits, are exempt from legal process and cannot be used to pay the plaintiff's cost of care without the patient's knowing, affirmative and unequivocal consent.

California appeals the district court's decision regarding Social Security and Veterans benefits.[3]

## I. Social Security Benefits

■ The first issue on appeal is whether the nonassignment provision of the Social Security Act, 42 U.S.C. § 407(a), preempts the process California utilizes to deduct Social Security benefits from patients' hospital accounts. The statute provides:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). If California's procedure conflicts with this federal statute, the Su-

premacy Clause of the United States Constitution requires that the state procedure be set aside. *Bennett v. Arkansas*, 485 U.S. 395, 397, 108 S.Ct. 1204, 1205, 99 L.Ed.2d 455 (1988) (per curiam).

In *Bennett*, the Supreme Court held that a state statute authorizing the state of Arkansas to attach a prisoner's Social Security benefits, to pay for the costs of incarceration, violates the Supremacy Clause. *Id.* The Court reasoned that § 407(a) unambiguously rules out any attempt to attach Social Security benefits. *Id.* Section 407(a) does not contain an implied exception for attachment of payments when a state has provided the recipient with care and maintenance. *Id.*

The Ninth Circuit applied *Bennett* in a case involving procedures similar to those challenged in the present case. *Brinkman v. Rahm*, 878 F.2d 263 (9th Cir.1989) (per curiam). Patients involuntarily committed to Washington state mental hospitals were liable to the state for the cost of their care. The state collected the money the patients owed by withdrawing funds, including Social Security benefits, from the patients' hospital accounts. *Id.* at 264. The state provided patients with a form entitled "Notice and Finding of Responsibility," which set forth patients' liability and explained that Social Security benefits would be applied to their costs of care. The form also explained that patients could appeal the determination of liability to the State Department of Social and Health Services. *Id.* In a *per curiam* opinion relying on *Bennett*, the Ninth Circuit concluded that Washington's procedures were inconsistent with, and therefore preempted by, 42 U.S.C. § 407.

Like the state of Washington in *Brinkman*, the state of California takes money, including Social Security benefits, from institutionalized patients' hospital accounts to pay for the cost of their care and treatment. California, like Washington in *Brinkman*, fails to obtain meaningful consent from patients prior to deducting Social Security benefits. The process California follows appears slightly different because California asks patients to sign an "Authorization for Deposit

---

**3.** The district court also concluded that patients are not entitled to a pre-deprivation hearing and that California's procedures do not violate the

Equal Protection Clause. Plaintiffs do not appeal this portion of the district court's decision.

and Withdrawal." However, the difference is without significance. The "Authorization" form does not explain that patients can refuse to apply Social Security benefits to the costs of care. Indeed, California does not believe that patients can refuse to do so. Rather, the Authorization form merely states that Social Security benefits are exempted from legal processes "so they will be available for the purpose of assuring [patients'] care, maintenance, and medical treatment," and adds that "[t]his Authorization for the use of these benefits is specifically for these stated purposes."

Furthermore, California does not deduct Social Security benefits only from accounts of patients who have signed the Authorization form. If patients do not sign the Authorization, the state deducts the money after providing the patient with a "Notice of Intended Withdrawal." The "Notice" merely informs patients that a stated amount of money will be deducted from their accounts and that they can appeal a withdrawal by contacting the trust officer. This "Notice" does not even mention Social Security benefits although money withdrawn includes such benefits. Like the state of Washington in *Brinkman*, the state of California deducts patients' Social Security benefits after providing minimal notice and without obtaining consent. The similarity between the procedures at issue in *Brinkman* and those California uses requires us to conclude that California's procedures are inconsistent with, and therefore preempted by, § 407.

Even though the procedures California uses are similar to those set aside in *Brinkman*, California argues that *Brinkman* is not dispositive. California's arguments require that we explicate the preemption analysis we began in *Brinkman*. In setting aside the procedures Washington utilized in *Brinkman*, this court relied on the portion of *Bennett*, discussed above, which states that 42 U.S.C. § 407(a), "rule[s] out any attempt to attach Social Security benefits," even when the benefits would be used to pay the cost of caring for an institutionalized person. *Bennett*, 485 U.S. at 397, 108 S.Ct. at 1205. Section 407(a) exempts Social Security benefits from "execution, levy, attachment, garnishment" and "other legal process." Be-

cause Washington did not employ any of the express legal processes prohibited by § 407(a), its procedures necessarily fall into the category of "other legal process." The procedures California uses are comparable and likewise constitute "other legal process."

California argues that the category of "other legal process," consistent with the processes expressly listed, encompasses only judicial process, i.e. collection proceedings initiated pursuant to court order. According to California, *Brinkman* is distinguishable because the notice to Washington patients provided that, after expiration of an appeal period, the state hospital would "obtain a superior court judgment for the amount of the debt, and invoke further enforcement proceedings, such as garnishment or attachment, if the debt is not paid." *Brinkman*, 878 F.2d at .264. Thus, Washington had at least threatened to use the judicial process. California's argument fails because the threat of court proceedings contained in the Notice to patients was irrelevant to the *Brinkman* decision. The court explained that, although court proceedings were mentioned, Washington never initiated such proceedings. "Rather, the hospitals' practice ... was simply to deduct the funds from the patients' hospital accounts without notice." *Id.* at 265.

Our conclusion, that "other legal process" includes the procedure that California uses to deduct Social Security benefits, is consistent with the purpose of § 407. The nonassignment provision was not designed to preclude use of only the judicial process to obtain Social Security benefits. Rather, § 407(a) is designed "to protect social security beneficiaries and their dependents from the claims of creditors." *Fetterusso v. New York*, 898 F.2d 322, 327 (2nd Cir.1990). The cramped reading of § 407 California urges would enable the state to obtain Social Security benefits through procedures that afford less protection than judicial process affords.

*Fetterusso*, a Second Circuit opinion that California cites to support its argument, is distinguishable. The Second Circuit concluded that § 407 did not preempt the process whereby the New York State Office of Mental Health deducted the cost of care from institutionalized mental patients' accounts, including accounts containing Social Security

benefits. 898 F.2d at 328. However, the Second Circuit stated it had no basis for concluding that the patients did not voluntarily agree to use their Social Security benefits to pay care and treatment costs. *Id.* In contrast, the plaintiffs in the present case either declined to sign the Authorization for Deposit and Withdrawal or revoked their authorization. They have not consented to apply Social Security benefits to the cost of their care.

Indeed, the Second Circuit indicated that "other legal process" is not limited to court-initiated enforcement proceedings. "Congress intended the words 'or other legal process' to embrace not only the use of formal legal machinery but also resort to express or implied threats and sanctions." *Id.* at 328. *See also King v. Schafer,* 940 F.2d 1182, 1185 (8th Cir.1991), *cert. denied, Crytes v. Schafer,* 502 U.S. 1095, 112 S.Ct. 1171, 117 L.Ed.2d 416 ("Other legal process" includes a threat to sue representative payees or to withhold state income tax refunds). These decisions are consistent with our conclusion that "other legal process" includes state hospitals' practice of withdrawing Social Security benefits from patient accounts without consent.

In one final attempt to distinguish *Brinkman,* California argues that the relief the *Brinkman* district court granted did not require that patients provide consent prior to deduction of Social Security benefits, but only that the state provide notice.[4] The remedy the district court granted, quoted in the Ninth Circuit opinion, included:

> Order[ing] the defendants to provide adequate notice to the plaintiffs of the defendants' seizure of their funds, adequate notice of any exemptions that might apply, and adequate opportunity to exercise those exemptions, and adequate notice of how to exercise those exemptions....

*Brinkman,* 878 F.2d at 266. Referencing this language, California argues that *Brinkman* requires notice but does not require that beneficiaries consent to deduction of their Social Security benefits.

California's interpretation of the *Brinkman* relief contains several flaws. First,

California fails to set forth other portions of the remedy, including: "Enjoin[ing] the defendants and their successors from seizing the plaintiffs' Social Security funds." *Id.* This portion of the relief suggests that Social Security benefits could not be deducted even after notice. Second, the Ninth Circuit set forth the district court's order in *Brinkman* in response to an argument raised by the state of Washington but declined to address the argument because Washington had not raised it before the district court. The Ninth Circuit never addressed the adequacy of the order.

Furthermore, the argument that the *Brinkman* order required only notice but not consent is inconsistent with the holding in *Brinkman* that 42 U.S.C. § 407 preempted Washington's administrative process. Social Security benefits are exempt from any legal process, whether administrative or judicial. Therefore a state can apply a patients' Social Security benefits to the cost of institutionalized care only if the patient has provided consent. Absent consent a state has no valid means of obtaining an institutionalized person's Social Security benefits.

The district court's order establishes the procedures the state must follow to effectuate the requirements of § 407. The order enjoins deduction of Social Security benefits absent patient consent. The order also provides that patients must be notified that Social Security benefits "are exempt from legal process and cannot be used to pay the plaintiff's cost of care without the patient's knowing, affirmative and unequivocal consent." This order is consistent with *Brinkman.*

We do not determine the wisdom of exempting Social Security benefits from legal process when a state has provided the beneficiary with care and maintenance. The Supreme Court has determined that § 407(a) is unambiguous and contains no implied exception for legal process to recover institutionalized persons' support costs. *Bennett,* 485 U.S. at 397, 108 S.Ct. at 1205. We are constrained to follow the Supreme Court's

---

**4.** California frames this argument as a challenge to the district court's decision regarding the notice necessary to satisfy the Due Process Clause. However, the notice and consent requirements with respect to Social Security benefits stem from 42 U.S.C. § 407 rather than from the Due Process Clause.

interpretation of Congressional intent with respect to § 407.

## II. Implied Contract

■ We reject California's argument that institutionalized patients have an implied contract with state psychiatric hospitals, in which patients consent to apply Social Security benefits to their cost of care. California argues that a contract "may be made or evidenced by a statute, and by conduct ensuing thereupon." *San Luis Obispo County v. Gage*, 139 Cal. 398, 406, 73 P. 174 (1903). Under § 7275, Cal. Welfare and Inst.Code, patients are liable to state hospitals for the cost of "care, support and maintenance." According to California, this statute, together with the institutionalization of a patient, creates an implied contract by which patients consent to application of their personal funds, including Social Security benefits, to their cost of care.

■ California's argument contains at least one fatal flaw. Consent is essential to the existence of a contract. Cal.Civ.Code § 1550. Consent or mutual assent is required regardless of whether the contract is express or implied. *Division of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal.App.3d 268, 137 Cal.Rptr. 855, 859 (1977). The difference between the two types of contracts is the mode of proof by which they are established. *Id.* An express contract is stated in words, Cal.Civ.Code § 1620, while an implied contract is inferred from conduct, Cal.Civ.Code § 1621. The plaintiffs are involuntarily institutionalized psychiatric patients. The act of involuntary commitment, by definition, cannot be conduct establishing the consent necessary to find an implied contract.

## III. Veterans Benefits

■ The district court's order requires California to provide notice "that certain federal benefits, specifically Social Security benefits and Veterans benefits, are exempt from legal process and cannot be used to pay the plaintiff's cost of care without the patient's knowing, affirmative and unequivocal consent." Although the district court provides no further analysis of the exemption for Veterans benefits, the notice requirement constitutes a determination that the nonassignment

statute governing Veterans benefits, 38 U.S.C. § 5301(a), preempts the process of deducting Veterans benefits from patients' accounts absent consent.

By including Veterans benefits in the order, the district court violated the well-established rule that "[a] court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings." *Brawner v. Pearl Assurance Co.*, 267 F.2d 45, 47 n. 2 (9th Cir.1958) (internal quotation omitted); *Armstrong Cork Co. v. Lyons*, 366 F.2d 206, 208 (8th Cir.1966) (internal quotation omitted). The patients' complaint contains five claims: 1) withdrawal of Social Security benefits conflicts with 42 U.S.C. § 407 and thereby violates the Supremacy Clause; 2) taking patients' funds absent prior notice and court hearing violates the Due Process Clause; 3) seeking authorization by informing patients that state law permits withdrawal without consent violates the Due Process Clause; 4) deducting funds from patients' hospital accounts without a court order violates Equal Protection; and 5) taking Social Security benefits without adequate notice and valid consent violates the Due Process Clause. These claims do not include the allegation that 38 U.S.C. § 5301(a) preempts California's practice of withdrawing Veterans benefits.

The patients argue that the district court amended the pleadings pursuant to Fed. R.Civ.P. 15(b), which provides in relevant part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment
> . . . .

While Rule 15 allows liberal amendments to the pleadings, no amendment was made in this case. Rule 15(b) allows a court to revise pleadings to conform to the case as it actually was litigated at trial. 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1491 (1990). The present case did not go to trial;

it was decided on motions for summary judgment. Therefore, the situation which Rule 15(b) addresses simply did not arise in the present case. Further, Rule 15(b) requires that one of the parties request an amendment. The record indicates that neither party did so. Rather, the district court raised the issue of Veterans benefits *sua sponte* during the hearing on the cross-motions for summary judgment and stated, "I will include how my order would affect veteran's beneficiary patients in the state hospitals also."

Because the district court did not have the authority to address an issue the parties did not raise, we vacate the portion of the district court's order requiring notice with respect to Veterans benefits. We also remand to provide the plaintiffs the opportunity to request an amendment to the pleadings. Amendment would not prejudice California, because it would not require California to undertake an entirely new course of defense, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990), or to conduct substantial additional discovery. *United States v. Pend Oreille Public Utility Dist. No. 1*, 28 F.3d 1544, 1552–53 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1356, 131 L.Ed.2d 214 (Mar. 20, 1995). The parties have already established the relevant facts regarding California's procedure for deducting benefits, including Veterans benefits.

## IV. Attorney's Fees

Because we vacate only the portion of the district court's decision requiring notice of an exemption for Veterans benefits, the district court need not recalculate the attorney's fees awarded. Attorney's fees could not have been awarded for work on the Veterans benefits issue because the parties neither raised nor addressed that issue before the district court.

The judgment of the district court requiring notice and consent with respect to Veterans benefits is VACATED and REMANDED for further proceedings consistent with this opinion. The remainder of the judgment is AFFIRMED.

TROTT, Circuit Judge, Concurring.

From a policy point of view, the end result in this case appears—to me at least—to be nonsensical. The State is picking up the bill for the hospitalized patients' necessities, but cannot obtain reimbursement from the patients' available funds if the patients resist. Thus, a recalcitrant patient receiving social security payments could pile up in about ten years an untouchable bank account of $250,-000 while requiring taxpayers to foot the bill for the costs of his hospitalization. The justification for such a result escapes me, and the upshot of our decision hardly seems consistent with the purpose of the Social Security Act. Could Congress have intended this outcome?

Nevertheless, Judge Tang's conclusion seems to be compelled by *Brinkman v. Rahm*, 878 F.2d 263 (9th Cir.1989) (per curiam). 42 U.S.C. § 407 as construed by *Bennett v. Arkansas*, 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) (per curiam), says what it says, and we should be loath to constrict the catchall words, "or other legal process" to allow the state access to a patient-debtor's money. If the patient-debtor were not under the absolute control of the state, a process such as execution, levy, attachment, garnishment, or some "other legal process," would be needed to get at his funds. But, because in this instance the state controls both the patient *and* his money, the state need not resort to such devices, as this case demonstrates. Under these circumstances, permitting the state to say, as it does, that taking money from people who don't want to give it up is not "legal process" sounds too much like a construction out of Bleak House, or the parchment stuff that animated Dick the Butcher in Henry the Sixth, Part 2. The end ultimately may be palatable, but the state's recommended manner of achieving it is not. California's goal may well be reachable, but we cannot get there from here without a sturdy legislative bridge. Thus, the answer to California's problem lies not in the courts but in Congress where, who knows, my analysis may prove to be misguided. Accordingly, I concur in Judge Tang's opinion.

## ORDER

Aug. 25, 1995

Pursuant to appellants' motion, which appellees have not opposed, the opinion filed June 7, 1995 is amended as follows:

[Editor's Note: Amendments incorporated for purpose of publication.]

IT IS SO ORDERED.