141 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Judith MOORE, Plaintiff-Appellant,
v.
Susan PARKS, Dr.; Leslie Crunelle; Lois Harrison; Adele
Blanco; Sandra Jones, et al., Defendants-Appellees.
 No. 96-56650.
D.C. No. CV 95 7739 WJR.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted February 5, 1998.
Decided March 17, 1998.
 
 Appeal from the United States District Court for the Central District of California, William J. Rea, Distict Judge, Presiding.
 Before FLETCHER, MAGILL** and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant, Ms. Moore, appeals the district court's grant of summary judgment in favor of the appellees/defendants. Ms. Moore alleges that she was dismissed arbitrarily from a nursing program offered by the Simi Valley Unified School District, and that she did not receive adequate notice and a hearing, in violation of her federal due process rights.
 
 
 3
 We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 I.
 
 4
 The district court's grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). The appellate court must view all facts in the light most favorable to the non-moving party, Ms. Moore. Id.
 
 
 5
 Summary judgment is proper if there are no genuine issues of material fact. Fed.R.Civ.P. 56(c). The party opposing the motion bears the burden of setting forth specific facts showing a genuine issue for trial; mere allegations or denials do not satisfy this burden. Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.1994).
 
 II.
 
 6
 Because we conclude that Ms. Moore received the process to which she was due and that defendants did not act arbitrarily, we assume for purposes of this memorandum that Ms. Moore had a property right that entitled her to due process.
 
 A.
 
 7
 The Supreme Court has held that no hearing is necessary when a student is dismissed for academic reasons. Board of Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 90, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). The Court noted that all that was required for a disciplinary suspension was an " 'informal give-or-take' between the student and the administrative body dismissing him." Id. at 86. Apparently, however, even less is required for an academic dismissal since the Court distinguished disciplinary dismissals from academic dismissals. The Court stated that unlike a decision to dismiss a student for disciplinary reasons, which by its nature resembles traditional judicial factfinding, a decision to dismiss for academic deficiency is "by its nature more subjective and evaluative.... The determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools or judicial or administrative decisionmaking." Id. at 90. This suggests that even less process is due when one is suspended for academic reasons. In any event, Ms. Moore received at least the process due for a disciplinary dismissal.
 
 
 8
 After missing her final examination in Pharmacology, Moore met with defendants Harrion and Blanco on two occasions--both in early December, around December 8th or 9th. They discussed the nursing program's requirements and their concern for her progress. At the second meeting, at which defendant Trereotola also was present, Moore was told that the faculty determined that she should be dismissed from the program.
 
 
 9
 Pursuant to the program's grievance policy, Moore was entitled to appeal her decision to the Simi Valley Unified School District, which she did. As a result of that meeting, which occurred on December 15, she was told that she would be allowed to take the Pharmacology Return Demonstration (RD) that she had missed. If she passed the RD, she was to be allowed to take the written examination and continue in the program. Ms. Moore does not deny that she was afforded this appeal process. Her ability to appeal the dismissal decision and retake the missed examinations satisfy the informal due process requirements extended by the Supreme Court in Horowitz.
 
 
 10
 Moore also argues that her due process rights were violated because she was not told that she had to "pass" the RD in order to be readmitted. As noted by the district court and as we also have observed, however, the student contract specifically stated that a passing grade would be necessary.
 
 B.
 
 11
 In addition to whatever process may be due a student upon academic dismissal, a student has a substantive due process right protecting her from an arbitrary or bad faith dismissal. See Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 224-25, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); see also Haberle v. Univ. of Alabama in Birmingham, 803 F.2d 1536, 1539 (11th Cir.1986). We defer to the decision of the school officials unless the plaintiff can show a substantial deviation from standard procedures:
 
 
 12
 When judges are asked to review the substance of a genuinely academic decision, ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.
 
 
 13
 Ewing, 474 U.S. at 225 (footnote omitted).
 
 
 14
 Moore's allegation of bad faith stems from her assertion that the RD she was required to take was more difficult than that administered to her classmates. We assume for the purposes of this memorandum that administering a test that is materially different and more difficult than that given to one's classmates is a "substantial departure" from academic norms and evidences bad faith. Moore supports her contention in two ways.
 
 
 15
 First, she relies heavily upon the declaration of her classmate, Clyde Schmidt. His declaration is the only evidence besides her own declaration that she has submitted. Schmidt avers the following:
 
 
 16
 The Pharmacology Return Demonstration was more of an analysis of our knowledge and learning experience than a test.
 
 
 17
 During the course of the Pharmacology Return Demonstration, the instructors aided the students, if necessary, in completion of the tasks involved in the demonstration.
 
 
 18
 The entire Pharmacology Return Demonstration was conducted in a very cooperative atmosphere rather than a test atmosphere.
 
 
 19
 The intent of the [PRD] appeared to be one of reinforcing what was supposed to have been taught and learned during the course.
 
 
 20
 Because the students did the [PRD] as a group, we had the opportunity to observe how other students performed the tasks required.
 
 
 21
 The [PRD] took approximately three hours with forty students participating.
 
 
 22
 According to Moore, this raises a genuine issue of material fact regarding her contention that the RD she took was more difficult than that taken by her classmates.
 
 
 23
 She notes that while Schmidt averred that it took just 3 hours for the entire class to take the RD, the RD taken by Moore lasted almost 7 hours. The defendants dispute both statements.[1] However, taking the evidence in the light most favorable to Moore, we must assume that Moore's and Schmidt's observations are true. Nevertheless, the difference in time does not suggest that the RD given to Moore was more difficult, since Moore explicitly was allowed to take all the time she wanted to at each station, and was given a full day to complete the RD. She does not deny that she was under no time constraint.
 
 
 24
 Schmidt's feelings about the cooperative nature of the RD are opinions. Assuming, as we must, that he truly felt that the RD was not an examination does not prove that the test taken by Moore was more difficult. Schmidt also averred that the instructors helped students during the RD he took, and that students were allowed to watch each other perform various tasks. As to the latter, since Moore missed the scheduled RD, there was no practical way for the defendants to simulate the exam atmosphere provided to her classmates, i.e., a group setting, so it was not arbitrary not to do so. Regarding the former, defendants admit that all students, including Moore, were instructed to take their time and to follow procedural steps, so Schmidt's statement does not necessarily contradict defendants' version of the events.
 
 
 25
 Second, Moore asserts that Blanco lied to the court when she submitted to the court the RD taken by Moore and that taken by the rest of the class. The two exams submitted were identical. Moore asserts that this proves that Blanco was lying because Blanco averred that Moore was given a "different but comparable" RD, yet the two submitted to the court were identical. Blanco noted, however, that the instructions and scenarios were identical--thus explaining the identical exams submitted to the court--but that different patient profiles were used--constituting the "difference" in the two RD's. This explanation is consistent with Blanco's affidavit.
 
 
 26
 Moore also asserts that the RD submitted by Ms. Blanco is not the RD that was administered to her, and that she in fact passed the RD administered to her. These are merely allegations unsupported by evidence. We find no indication of any proof submitted or to be submitted by Moore on these points.
 
 
 27
 Finally, Moore asserts that her dismissal was contrary to school policy. She avers specifically that students are allowed to re-take classes that they failed. However, the school's classroom manual clearly states, "Successful completion of each clinical level is required before continuing to the next level. Failure to pass one clinical level (75%)[2] WILL RESULT IN TERMINATION FROM THE PROGRAM." (emphasis in original). Moreover, Moore was dismissed pursuant to the school's policy to expel those students who do not demonstrate clinical competence and who, in the instructor's opinion, might endanger the safety of patients. ("A student may be dismissed if, in the judgment of the instructor, the administration of the school, and a staff member of the clinical faculty, all agree that the act or actions of a student is indicative of a lack of competency to the extent that the safety of patients will be endangered.") These are precisely the types of judgments that courts are ill-equipped to second-guess. Ewing, 474 U.S. at 225.
 
 IV.
 
 28
 Moore's complaint alleges a single cause of action--a violation of her due process rights under the Fourteenth Amendment. In her Reply Brief before this court, Moore now requests leave to amend her complaint to add an additional cause of action--violation of 42 U.S.C. § 1985(c), conspiracy to deprive one of one's civil rights.
 
 
 29
 To support her position that leave to amend a complaint may be granted when raised for the first time on appeal, Moore cites Crawford v. Gould, 56 F.3d 1162 (9th Cir.1995) and Galindo v. Stoody Co., 793 F.2d 1502 (9th Cir.1986). These cases are not analogous to the instant case, however. Both concern the district court's power to allow a party to amend its pleading to conform to the case as actually litigated. Gould, 56 F.3d at 1168; Galindo, 793 F.2d at 1512-13. Moore's case was not litigated, however, and at no point did she introduce evidence or the suggestion that defendants had conspired against her because of her disability. She may not introduce a new cause of action on appeal.[3]
 
 V.
 
 30
 Moore has adduced no evidence to rebut the defendants' submissions that she received all the process to which she was due before she was dismissed from the program. She has not offered evidence suggesting that there are genuine issues of material fact as to her allegation that she was dismissed from the program arbitrarily or in bad faith. The grant of summary judgment in defendants' favor was proper.
 
 
 31
 Accordingly we AFFIRM.
 
 
 
 **
 Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendants contend that the RD taken by the class as a whole could not have been completed in just 3 hours. They also contend that the RD taken by Ms. Moore lasted 4 hours and twenty minutes
 
 
 [2]
 A 75% score is needed for all classes except Pharmacology, which requires an 85% score
 
 
 [3]
 Furthermore, plaintiff cites no case and makes no argument to support her position that persons with disabilities are covered as a class under § 1985, although there appears to be a circuit split on this issue. See W.B. v. Matula, 67 F.3d 484, 503 n. 15 (3d Cir.1995) (noting that the Eighth and Second Circuits have held that disabled persons are covered as a class under § 1985, but that the Tenth and Seventh Circuits have reached the opposite conclusion)