103 F.3d 805
 96 Cal. Daily Op. Serv. 9290, 97 Daily Journal
D.A.R. 352
Ana Maria VILLEGAS-VALENZUELA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Martina LIMON-PEREZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 95-70767, 95-70841.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided Dec. 20, 1996.
 
 Ralph J. Leardo, San Francisco, CA, for petitioners.
 Karen Fletcher Torstenson, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent.
 Petitions to Review Decisions of the Executive Office for Immigration Review. OCAHO Nos. 94C00204, 95C00024.
 Before: RONEY,* BEEZER, and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 Ana Villegas-Valenzuela and Martina Limon-Perez petition to overturn decisions of administrative law judges granting summary decisions in favor of the Immigration and Naturalization Service ("INS") in two separate civil document fraud proceedings seeking civil money penalties under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324c(a)(2). We must consider whether employees violate section 1324c(a) by using false immigration documents to prove to their employers that they are eligible for employment. Because we conclude that such use of false documents by employees violates the statute, we dismiss the petitions.[1]
 
 I. BACKGROUND
 A. The Statutory Framework
 
 2
 In 1986, Congress enacted the Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. No. 99-603, 100 Stat. 3359 (1986) (codified in scattered sections of 8 U.S.C.), which amended the INA and, among other things, made it unlawful for an employer knowingly to hire an alien who is unauthorized to work in the United States. Id. § 1324a. The statute creates an employment-eligibility verification system. Under this system, an employer must execute a verification form ("I-9"), attesting under penalty of perjury, that it has examined the requisite documents showing the employee's identity and employment authorization and thereby verified that its employee is not an unauthorized alien. Id. § 1324a(b)(2). If an employer fails to comply with the employment-eligibility verification requirements, it can be sanctioned under the statute. Id. § 1324a(e)(4).
 
 
 3
 In 1990, Congress concluded that the IRCA's employer-sanctions provisions were not having the desired effect of reducing the flow of illegal immigration that is motivated by the prospects of U.S. employment. See 136 Cong. Rec. S13,628-29 (daily ed. Sept. 24, 1990) (statement of Sen. Simpson). In response to this concern, Congress enacted the Immigration Act of 1990 ("1990 Act"), Pub.L. No. 101-649, 104 Stat. 4978 (codified at 8 U.S.C. § 1324c (1990)). The 1990 Act makes it unlawful for any person knowingly to use or accept counterfeit, altered, forged, or falsely made documents in order to satisfy various requirements of the IRCA's, including the attestation requirements discussed above. Id. § 1324c(a). The 1990 Act imposes civil money penalties of not less than $250 and not more than $2,000 for each instance of document fraud. Id. § 1324c(d)(3)(A). A person charged with document fraud under the 1990 Act is entitled to a hearing before an administrative law judge ("ALJ") in accordance with the requirements of the Administrative Procedure Act, 5 U.S.C. § 554. Id. § 1324c(d)(2). The ALJ's decision becomes a final order unless the agency modifies or vacates the decision within 30 days. Id. § 1324c(d)(4). A party adversely affected by a final order may petition the Court of Appeals for review within 45 days after the order becomes final. Id. § 1324c(d)(5).
 
 B. Facts and Prior Proceedings
 
 4
 In 1994, Villegas-Valenzuela and Limon-Perez (together, "Petitioners") worked as housekeepers at two different hotels in Fresno, California. That same year, United States Border Patrol Agent Steven Borup separately took Petitioners into custody after obtaining copies of fraudulent social security cards and alien registration cards that Petitioners had showed to their respective employers to prove their employment eligibility. Agent Borup also obtained copies of the "I-9" immigration forms Petitioners had signed, attesting that they were eligible to work. On the I-9 forms, each Petitioner had attested: "under penalty of perjury, the documents that I presented as evidence of identity and employment eligibility are genuine and relate to me. I am aware that federal law provides for imprisonment and/or fine for any false statements or use of false documents in connection with this certificate."
 
 
 5
 Agent Borup interviewed each Petitioner and contemporaneously recorded the interviews by typing a "Record of Sworn Statement." Both Petitioners admitted to using the fraudulent documents, which had been purchased from Los Angeles street vendors, to "obtain employment in the United States." Both Petitioners also admitted that they had showed the "counterfeit" cards to their employers to prove they were authorized to work in the United States.
 
 
 6
 Based upon the information obtained by Agent Borup, the INS filed complaints seeking civil money penalties under 8 U.S.C. § 1324c(a)(2). The complaints charged that Petitioners had "knowingly used and possessed the forged, counterfeit, altered, and falsely made documents ... in order to satisfy any requirement of the Immigration and Nationality Act." The complaints specifically identified the social security cards and alien registration cards as the fraudulent documents in question.
 
 
 7
 In their answers, Petitioners raised affirmative defenses, including that the complaints failed adequately to state claims upon which relief could be granted. Specifically, they argued that: 1) the complaints were conclusory and vague; and 2) section 1324c(a)(2) did not apply to their actions as employees.
 
 
 8
 The INS moved to strike the affirmative defenses and for summary decision in both cases. In support of its motions, the INS argued that the documents were counterfeit because computer printouts from the INS Central Index System showed that the Alien Registration Numbers on Petitioners' cards were issued to other aliens. The INS's motions were supported by Agent Borup's affidavits and the "Records of Sworn Statements" taken by Agent Borup.[2]
 
 
 9
 The ALJs granted the INS's motions to strike the affirmative defenses because of controlling precedent of the Office of the Chief Administrative Hearing Officer ("OCAHO"), which provided that section 1324c(a)(2) does apply to the actions of employees, and because the defenses were not supported by a "statement of fact" as required by 28 C.F.R. § 68.8(c)(2). The ALJs also granted the INS's motions for summary decision, concluding that the INS was entitled to judgment as a matter of law. The ALJs then fined each Petitioner the statutory minimum penalty of $500.00 ($250.00 for each fraudulent document used).
 
 
 10
 The OCAHO refused to modify the ALJs' orders. Petitioners appealed to this court, contending: 1) that an employee's use of false documents to verify employment eligibility does not violate section 1324c(a)(2); 2) that the administrative complaints filed by the INS failed to adequately state claims upon which relief could be granted because they were conclusory and vague; and 3) that summary decision was inappropriate because the INS's evidence was insufficient for the ALJs to conclude as a matter of law that each Petitioner possessed the requisite mens rea specified in the statute.
 
 II. DISCUSSION
 
 11
 A. Did the Petitioners Violate 8 U.S.C. § 1324c(a)(2)?
 
 
 12
 To determine if an employee violates section 1324c(a)(2) by using fraudulent documents to prove employment eligibility, we consider the plain language of the statute, its legislative history, and the relevant caselaw interpreting the statute. We review questions of statutory interpretation de novo, Braun v. INS, 992 F.2d 1016, 1018 (9th Cir.1993), but we give deference to an agency's interpretation of the statutes it administers. Mason v. Brooks, 862 F.2d 190, 192 (9th Cir.1988); see also Fernandez v. Brock, 840 F.2d 622, 631 (9th Cir.1988) (where statutory language is ambiguous, court must "defer to the agency's interpretation of the statute if it is based on a permissible construction of the statute" and must "not substitute [its] own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency") (internal quotation omitted). We are not obligated, however, to accept an interpretation that is "demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute." Bui v. INS, 76 F.3d 268, 269-70 (9th Cir.1996) (quotation omitted).
 
 
 13
 Our analysis must begin with the statute itself; the language of the statute controls where it is not ambiguous or unconstitutional. Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). Section 1324c(a) provides:
 
 
 14
 It is unlawful for any person or entity knowingly
 
 
 15
 (1) to forge, counterfeit, alter, or falsely make any document for the purpose of satisfying a requirement of this chapter,
 
 
 16
 (2) to use, attempt to use, possess, obtain, accept, or receive or to provide any forged, counterfeit, altered, or falsely made document in order to satisfy any requirement of this chapter,
 
 
 17
 (3) to use or attempt to use or to provide or attempt to provide any document lawfully issued to a person other than the possessor (including a deceased individual) for the purpose of satisfying a requirement of this chapter, or
 
 
 18
 (4) to accept or receive or to provide any document lawfully issued to a person other than the possessor (including a deceased individual) for the purpose of complying with section 1324a(b) of this title.
 
 
 19
 8 U.S.C. § 1324c(a) (emphasis added).
 
 
 20
 In order to establish a violation of 8 U.S.C. § 1324c(a)(2), therefore, the INS must show that 1) the Petitioner used the forged, counterfeit, altered, or falsely made documents, 2) knowing the documents to be forged, counterfeit, altered, or falsely made, 3) after the November 29, 1990 enactment date of the 1990 Act, 4) for the purpose of satisfying "any requirement" of the INA. United States v. Morales-Vargas, No. 94C00084, 1995 WL 265083, at * 3 (O.C.A.H.O. Mar. 13, 1995). Petitioners allege that the fourth element precludes the actions against them.
 
 
 21
 Petitioners argue that 8 U.S.C. § 1324a, which codifies the employment-eligibility-verification system, imposes duties only upon employers. Therefore, Petitioners contend, providing false documents to an employer to prove employment eligibility cannot constitute a violation of any duty imposed as a requirement of the INA. In short, noting that most of the requirements found in section 1324 run to employers, Petitioners urge this Court to limit civil document fraud actions only to employers.[3] To do so, however, would be contrary to the plain language of the statute.
 
 
 22
 Although many of the requirements in the chapter direct employers' actions, section 1324c(a)(2) states that it is a violation for any person to show false documents in order to satisfy any requirement of the chapter. On its face, the statute contemplates the exchange of documents between the employee and the employer in order to verify employment eligibility. See 8 U.S.C. § 1324a(b)(1) (employer must "attest ... that it has verified that the individual is not an unauthorized alien by examining ... document[s]"). As the OCAHO has noted, "[e]ven if the verification requirement is characterized as exclusively that of the employer, the actions of an employee in presenting fraudulent documents are undertaken to satisfy that requirement and thus gain illegal employment." Morales-Vargas, 1995 WL 265083, at * 4.
 
 
 23
 An employee's use of false documents to prove employment eligibility therefore satisfies one of the requirements of the chapter, namely that the employer examine the documents and attest that the employee is eligible to work. Had Congress desired to limit the sweep of section 1324c(a), it could have done so when it enacted the statute. For example, Congress could have said "any requirement of the Act imposed upon the person or entity that commits the document fraud." Similarly, had Congress desired to limit sanctions exclusively to employers, it could have done so merely by inserting the word "employer" in lieu of "person." But the language of the statute does nothing to limit the scope of its applicability; it simply refers to any person and any requirement of the Act, without exception. 8 U.S.C. § 1324c(a)(2); see also Morales-Vargas, 1995 WL 265083, at * 4.
 
 
 24
 Finally, Petitioners observe that another subsection of 1324c(a), specifically subsection 1324c(a)(4),[4] explicitly refers to the employer-attestation requirements of section 1324a(b). Because section 1324c(a)(2) fails to make such an explicit reference to the attestation requirements, Petitioners contend, its reference to "any requirement" does not include the attestation requirements. Although it is unclear why Congress chose to refer specifically to the attestation requirements in section 1324c(a)(4), its failure to make a specific reference in the other three subsections does not mean that Congress excluded the attestation requirements from the meaning of "any requirement." Congress used broader language in sections 1324(a)(1), (a)(2), and (a)(3). As discussed above, Congress's use of the word "any" encompasses all requirements of the chapter, including the attestation requirements.
 
 
 25
 Although we need not consider a statute's legislative history when its language is clear, the legislative history in this case supports our interpretation of the statute. In 1990, Congress determined that the IRCA's employer sanctions were not reducing illegal immigration sufficiently, largely because of the "large number of false documents that now exist which can be used to fraudulently satisfy the employment authorization requirement of employer sanctions." 136 Cong. Rec. S13,629 (daily ed. Sept. 24, 1990) (statement of Sen. Simpson). In response to this problem, Senator Alan Simpson, the author of the 1990 Act stated: "I am today introducing legislation which would do the following: ... create a system of civil fines to deter users of fraudulent documents." Id. (emphasis added). Thus, the legislative history indicates that section 1324c was designed to apply to the users of the fraudulent document-such as the Petitioners.
 
 
 26
 Our holding is also consistent with United States v. Oloyede, 982 F.2d 133, 136 (4th Cir.1993), in which the Fourth Circuit declared that 8 U.S.C. § 1324(a)(1)(D), which proscribes harboring of aliens, was not limited specifically to employers. In Oloyede, the defendants contended that the alien harboring provision of the IRCA was intended only to penalize employers. Id. Because the defendants were not employers, they alleged they could not be prosecuted under the IRCA. Id. The Fourth Circuit rejected this contention. Noting that the alien harboring statute, like the document fraud statutes, applies to "any person," the court concluded that "Congress intended to give broad scope to the class of persons whose conduct is proscribed by the statute." Id. This reasoning further supports our holding.
 
 
 27
 The ALJs' determinations that employees violate section 1324c(a) by using false documents to verify their employment eligibility are supported by the language of the statute, its legislative history, and relevant caselaw. The ALJs' decisions were therefore not "demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute." Bui, 76 F.3d at 269-70 (quotation omitted).
 
 
 28
 B. Did the Complaints Properly State a Claim?
 
 
 29
 Petitioners next contend that the INS complaints were conclusory and vague and therefore did not adequately state claims upon which relief could be granted.[5] We reject this contention. We review de novo whether the ALJ properly declined to dismiss the complaint for failure to state a claim. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The rules of practice governing these proceedings require that the complaint contain "a clear and concise statement of facts for each violation alleged to have occurred." 28 C.F.R. § 68.7(b)(3).
 
 
 30
 In both cases, the complaints stated that Petitioners knowingly used two fraudulent documents; the complaints also identified the documents the Petitioners used, and cited the statutory provision they violated. Petitioners have not shown that they had insufficient notice of the nature of the charges against them or that they suffered any prejudice. See Filiberti v. Merit Sys. Protection Bd., 804 F.2d 1504, 1508 (9th Cir.1986). Moreover, administrative pleadings are to be liberally construed. Donovan v. Royal Logging Co., 645 F.2d 822, 826 (9th Cir.1981). Thus, the ALJs correctly concluded that the complaints properly stated grounds upon which relief could be granted.
 
 
 31
 C. Was Summary Decision Appropriate?
 
 
 32
 Petitioners next argue that summary decision was inappropriate because: 1) the INS's motions were not supported by authenticated or admissible evidence;[6] 2) Agent Borup's affidavits were not in proper form; 3) use of Petitioners' "sworn statements" would be fundamentally unfair unless Petitioners could cross-examine Agent Borup; 4) the sworn statements were taken in violation of their alleged rights to remain silent and rights to counsel; 5) Petitioners were denied the opportunity to conduct discovery; and 6) the INS failed to carry out its burden with respect to the elements charged.
 
 
 33
 We review a grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the relevant substantive law was correctly applied. Id. In evaluating Petitioner's claim that the ALJ considered inadmissible evidence, we review for an abuse of discretion. United States v. A.E. Lopez Enters., Ltd., 74 F.3d 972, 976 (9th Cir.1996).
 
 
 34
 In document fraud cases, summary decision may be granted when the "pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed show that there is no genuine issue as to any material fact and that a party is entitled to summary decision." 28 C.F.R. § 68.38(c). In reaching their decisions, the ALJs considered Petitioners' I-9 forms, copies of the fraudulent documents, Agent Borup's affidavits, and documents from the INS Central Index System indicating that the alien registration numbers appearing on Petitioners' cards were issued to other aliens. Petitioners argue that these documents were not properly authenticated, but, aside from pure speculation, Petitioners did not present any evidence to question their authenticity. In Petitioners' affidavits in opposition to the INS's motion for summary decision, Petitioners did not refute their admissions to Agent Borup that they had used fraudulent documents, nor did they deny that they had purchased the documents on the streets of Los Angeles in order to use the documents to verify employment eligibility.
 
 
 35
 The INS, on the other hand, submitted Agent Borup's affidavits explaining how he had come into possession of copies of the fraudulent documents, as well as how the Central Index System showed that Petitioners' alien registration numbers were assigned to other aliens. The Ninth Circuit requires that the evidence be authenticated through some recognized procedure. See Iran v. INS, 656 F.2d 469, 472 (9th Cir.1981). Agent Borup's affidavits were sufficient to satisfy this requirement.[7] This conclusion is consistent with the well-settled rule that agencies are not bound by strict rules of evidence in cases brought under the Administrative Procedure Act. See, e.g., Calhoun v. Bailar, 626 F.2d 145, 148 (9th Cir.1980), cert. denied, 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981); Marlowe v. INS, 457 F.2d 1314, 1315 (9th Cir.1972) (per curiam). In light of Agent Borup's explanation as to how he had obtained copies of Petitioners' fraudulent documents, and how he had determined that Petitioners' Alien Registration Numbers belonged to other aliens, the ALJs did not abuse their discretion by considering this evidence.
 
 
 36
 Petitioners' claims that Borup's affidavits were not in the proper form are also without merit. Although the affidavits contain no jurat, Borup "solemnly swears" to the information contained in the affidavits. Because the ALJs are not strictly bound by the rules of evidence, Calhoun, 626 F.2d at 148, the ALJs did not abuse their discretion by considering the affidavits.
 
 
 37
 Petitioners next contend that they should have been allowed to cross-examine Agent Borup. This court has rejected similar contentions in the past. See Espinoza v. INS, 45 F.3d 308, 311 (9th Cir.1995) (concluding that alien is not entitled to cross-examine preparer of INS form I-213 (sworn statement of alien) when preparer was INS agent and no evidence contradicted the challenged hearsay). Here, although Petitioners contend that they should have been able to challenge Borup's fluency in Spanish, Petitioners presented inadequate evidence contradicting their statements in the affidavits or in their sworn statements. Petitioners had an opportunity to contest the substance of any of their statements contained in the affidavits, including their statements that the documents were fraudulent. See Trias-Hernandez v. INS, 528 F.2d 366, 369 (9th Cir.1975) (no hearsay or cross-examination problems where alien had opportunity to dispute understanding of questions put to him by INS agent and could have corrected errors in the statement). Thus, the ALJs did not abuse their discretion by denying Petitioners the opportunity to cross-examine Agent Borup.
 
 
 38
 Petitioners' claims that they were not advised of alleged rights to silence and to counsel in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and 8 C.F.R. § 287.3 are similarly without merit. Miranda warnings are not applicable in this type of administrative proceeding. See Trias-Hernandez, 528 F.2d at 369. Although INS regulations provide for similar warnings in other contexts, see 8 C.F.R. § 287.3, those regulations are not applicable in document fraud cases. Document fraud actions have their own C.F.R. guidelines in 8 C.F.R. § 270.2. In subsection 270.2(e), the regulations require the INS to tell the alien that he or she has a right to counsel, but only as part of the Notice of Intent to Fine. The regulations therefore did not require Agent Borup to give Petitioners any admonitions of a right to remain silent or a right to counsel before he interviewed them.
 
 
 39
 Petitioners next contend that the INS's evidence was not sufficient for the ALJs to conclude as a matter of law that each Petitioner had the requisite mens rea specified in the statute.[8] For someone to violate section 1324c, he or she must "knowingly" use fraudulent documents. Petitioners contend that the INS has not produced evidence proving that Petitioners knew what a "fraudulent" or "counterfeit" card was. The record, however, does not support this contention. Petitioners admitted to Agent Borup that they bought the alien registration and social security cards from Los Angeles street vendors in order to establish employment eligibility. Petitioners never disputed that they made these statements. In light of Petitioners' admissions, a reasonable person would have to conclude that Petitioners knew the documents were not genuine. Thus, the evidence was sufficient to prove each Petitioner possessed the requisite mens rea.
 
 
 40
 Finally, Petitioners contend that they should have been given time to conduct further discovery in order to show that the statements made to Agent Borup were involuntary. We review the decision to cut off discovery for an abuse of discretion. California Union Ins. v. American Diversified Sav. Bank, 914 F.2d 1271, 1278-79 (9th Cir.1990), cert. denied, 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1052 (1991). The Federal Rules of Civil Procedure are to be used as a "general guideline" in any situation not provided for in the regulations. 28 C.F.R. § 68.1. Under Federal Rule of Civil Procedure 56(f), a party seeking further discovery must show that it lacks the facts essential to resist the summary judgment motion. Here, Petitioners have not shown that there is any relevant information exclusively in the hands of the INS; Petitioners know just as much information as the INS regarding the voluntariness of their statements to Agent Borup. Further, Petitioners did not allege facts sufficient to support a showing that their statements to Agent Borup were involuntary. The only other potentially significant issue to contest would be Borup's Spanish-speaking skills, but Petitioners did not adequately question the substance of the statements or translations contained in Borup's affidavits. Thus, discovery on these issues was properly cut off.
 
 CONCLUSION
 
 41
 Because an employee's use of false documents to prove employment eligibility to an employer falls within the ambit of section 1324c, the ALJs properly concluded that the INS's complaints adequately stated grounds upon which relief could be granted. The ALJs did not err in admitting and considering the INS's evidence, and summary decision was appropriate. Accordingly, we AFFIRM the ALJs' orders and DENY the petitions.
 
 
 
 *
 The Honorable Paul H. Roney, Senior Circuit Judge for the 11th Circuit, sitting by designation
 
 
 [1]
 We have consolidated the Villegas-Valenzuela and Limon-Perez petitions for purposes of appeal and disposition
 
 
 [2]
 In Petitioner Limon-Perez's case, the government submitted two affidavits by Agent Borup. The two affidavits have conflicting dates and locations regarding Petitioner's interview. Pursuant to Petitioner's request, we have considered both affidavits in deciding this appeal
 
 
 [3]
 Section 1324a(b)(1), for example, requires that an employer must attest, under penalty of perjury, that an employee is not an unauthorized alien by examining a legally acceptable document or combination of documents which enable the employer to establish and verify the employee's identity and work eligibility. 8 U.S.C. § 1324a(b)(1)
 
 
 [4]
 Section 1324c(a)(4) makes it unlawful for person to provide any document lawfully issued to a person other than the possessor "for the purpose of complying with section 1324a(b) of this title."
 
 
 [5]
 Petitioner Limon-Perez also argues that the INS's motion to strike her affirmative defenses was untimely because the INS filed its motion approximately three days late. Petitioner relies on United States v. Applied Computer Technology, 2 OCAHO 306 (March 22, 1991), in which the court determined that Federal Rule of Civil Procedure 12(f) precluded the government's late filing of a motion to strike affirmative defenses. The motion in that case, however, was filed more than 80 days late. Id. Moreover, the Federal Rules of Civil Procedure are to be used as a "general guideline" in any situation not provided for in the regulations. 28 C.F.R. § 68.1. The ALJ maintains discretion to accept pleadings within a time period he may fix. 28 C.F.R. § 68.11(b). He did not abuse that discretion
 
 
 [6]
 Additionally, Petitioner Villegas-Valenzuela alleges that the ALJ erred because he determined that the INS's motion for summary decision did not need to be supported by admissible or authenticated evidence. We agree with Petitioner that this determination contradicts the well-established rule that only admissible evidence may be considered by a court in ruling on motions for summary judgement. See Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir.1988). However, the ALJ in Villegas-Valenzuela corrected any error by considering Agent Borup's affidavit that authenticated the evidence. As the ALJ noted, "the challenge that the [motion for summary decision] is deficient because the evidentiary support initially lacked verification was rendered moot by the June 19, 1995 filing by [the INS] of an affidavit by Borup." Because the Borup affidavit authenticated the evidence, its consideration cured any possible error in the ALJ decision
 
 
 [7]
 Petitioner Limon-Perez contends that because Agent Borup submitted two affidavits indicating different dates and locations for her interview, the affidavits are "irreconcilably in conflict." However, the second affidavit appears merely to correct an erroneous date on the first affidavit, and gives more detailed authentication for the Central Index System printout. The second "conflict" in the affidavits is the location of the interview with Limon-Perez. The relevant issue, however, is whether Limon-Perez made the admissions to Borup, not where the interview took place
 Additionally, Petitioner Villegas-Valenzuela contends that Borup's affidavit was filed late, and that the ALJ did not authorize its filing. We reject these arguments. First, the ALJ, at the very least, implicitly authorized the filing of the Borup affidavit because the ALJ considered it in his ruling. Second, the ALJ maintains discretion to accept pleadings within a time period he may fix. 28 C.F.R. § 68.11(b).
 
 
 [8]
 Petitioners argue that the ALJs misunderstood the respective parties' burdens regarding summary decision. Petitioners rely on Mateo v. M/S Kiso, 805 F.Supp. 761, 775 (N.D.Cal.1991), for the proposition that "[w]here the party moving for summary judgment will also bear the burden of proof at trial, then the moving party faces a relatively heavier burden." Id. Because the INS had the burden of proof at the hearings, Petitioners contend the INS bore the "heavy" burden of establishing each and every essential element of the offense charged by undisputed evidence. Given the facts and circumstances of Petitioners' cases, however, this heavy burden would not change the outcome of the ALJs' decisions