## Henri BAGDADI, d.b.a. Languavision, Plaintiff–Appellant,

v.

## Jose NAZAR; Hispanic–American Educational Materials, Inc., d.b.a. Lexicon School of Languages; Lexicon Institute, Inc.; Lexicon Sales Corp.; Linguex, USA, a Colorado corporation; Linguex International Limited, a British Virgin Islands corporation; and Linguex Washington DC, a District of Columbia joint venture, Defendants–Appellees.

### No. 94–56588.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1996.

Decided May 29, 1996.

---

Richard E. Posell, Greenberg, Glusker, Fields, Claman & Machtinger, Los Angeles, California, for plaintiff-appellant.

James C. Potepan, Cooper, Kardaras & Scharf, Pasadena, California, for defendant-appellees Nazar, Hispanic American Educational Materials, Inc., d.b.a Lexicon School of Languages: ISB of America, Inc., ISB of Texas, Inc., Lexicon Institute, Inc., Lexicon Sales Corp., Lexicon Service Corp.

Vincent M. O'Brien, Rankin, Luckhardt, Vandeweghe, Landsness & Lahde, San Jose, California, for defendant-appellee Linguex.

Before O'SCANNLAIN and TROTT, Circuit Judges, and VAN SICKLE, District Judge.*

* The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. Nazar refers to Defendants Jose Nazar; Hispanic–American Educational Materials, Inc.

TROTT, Circuit Judge:

## OVERVIEW

Appellant Henri Bagdadi (Bagdadi) appeals the district court's grant of summary judgment in favor of Defendants Jose Nazar (Nazar)[1] and Linguex[2] in his action for copyright infringement. The district court granted Nazar's motion for summary judgment and *sua sponte* granted summary judgment for Linguex. The court concluded that Defendants were entitled to an absolute defense as "innocent infringers" pursuant to section 406(a) of the Copyright Act of 1976. We affirm summary judgment as to Defendant Nazar and reverse the *sua sponte* grant of summary judgment as to Defendant Linguex.

## FACTS

In 1983, Bagdadi contracted with Linguex to produce a series of language instruction videos. Linguex was opening language instruction schools and wanted Bagdadi to make an audio-visual program for use by instructors. The project included the video "English I," which is the subject of this dispute. On the "English I" video, Bagdadi placed the Linguex Company logo and a notice reading "Copyright 1984 by Linguex International Limited, All Rights Reserved." He also included graphics crediting himself as the writer, director, and producer of the video. Neither Bagdadi nor Linguex registered a copyright for the video when it was created.

Bagdadi and Linguex agree that at the time they contracted, they intended that Linguex would use the video for classroom use only. The video was formatted for a classroom setting, requiring a teacher. After the video was completed, Linguex sent Bagdadi a copyright release form, but Bagdadi objected to it and sent it back with changes. The copyright matter was never resolved, and no copyright transfer has surfaced.

d/b/a Lexicon School of Languages; Lexicon Institute, Inc.; and Lexicon Sales Corp.

2. Linguex refers to Linguex, U.S.A., Inc.; Linguex International Limited; and Linguex Washington, D.C.

In the fall of 1988, Linguex sold approximately 400 copies of the "English I" video to a different language instruction school, the Lexicon School, for inclusion in a 12–cassette series known as "Ingles Sin Barreras." In October 1988, Bagdadi coincidentally visited the Lexicon School. The school was operated by Defendant Jose Nazar, and Bagdadi was considering buying the school. While in the lobby of the school, Bagdadi saw a video monitor playing "English I," and he told Nazar that he had made the video. Bagdadi claims that no one at Lexicon School told him that "English I" was being offered for sale, and that he did not see any ads or displays indicating that it was for sale. Nazar never asked Bagdadi any questions about the rights to the video. In a letter following his meeting with Nazar, Bagdadi commented on the display of the video, but he did not protest its use. Nazar states that the video was for sale, but Bagdadi claims that he thought the video was being used for classroom use and he did not recognize it as part of a sales display.

In January 1989, Linguex entered into a licensing agreement with Nazar to authorize the reproduction and sale of the "English I" video. In July 1993, Bagdadi saw a television infomercial on "Ingles Sin Barreras" and recognized a clip from "English I." Bagdadi first notified Nazar of his objection to their use of the video on October 27, 1993. On December 22, 1993, Bagdadi obtained a copyright registration for "English I."

On January 18, 1994, Bagdadi filed this action. Nazar moved for summary judgment, claiming to be an "innocent infringer," as the term is used in section 406(a) of the Copyright Act. Defendants American Top English, Inc. and National Education Systems joined in Nazar's motion. The district court granted summary judgment in favor of those Defendants, and then granted summary judgment *sua sponte* to Defendant Linguex.

**3.** The owner of a copyright has the exclusive right to: 1) reproduce the copyrighted work; 2) to prepare derivative works based on the copyrighted work; 3) to distribute copies of the work

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *Id.* at 441.

## DISCUSSION

This action is governed by the Copyright Act of 1976 because the work in question was created after January 1, 1978, and it involves "an original work[ ] of authorship fixed in [a] tangible medium of expression ... from which [it] can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a); *see* 17 U.S.C. § 301(a)(exclusive rights within general scope of copyright governed exclusively by this title). Copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a).

■ For purposes of the motion for summary judgment, this court must assume, as the district court did, that Bagdadi "owned" the copyright and that he did not transfer ownership of the copyright to Linguex. Bagdadi claims that his exclusive license to Linguex granted only the right to use the video for classroom use. It is important to note that the various rights [3] included in a copyright are divisible and that "any of the exclusive rights comprised in a copyright ... may be transferred ... and owned separately." 17 U.S.C. § 201(d)(2). An exclusive licensee owns separately only the "exclusive rights comprised in the copyright" that are the subject of his license. Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.02[C] (1995) [*Nimmer on Copyright*].

Defendants claim that, even assuming Bagdadi's ownership of the copyright, they were

to the public by sale, lease, etc.; 4) to perform the copyrighted work publicly; and 5) to display the copyrighted work publicly. 17 U.S.C. § 106.

entitled to summary judgment based on an absolute defense of innocent infringement under section 406(a) of the Copyright Act. Section 406(a) states:

> With respect to copies ... publicly distributed by authority of the copyright owner ..., where the person named in the copyright notice on copies ... publicly distributed by authority of the copyright owner is not the owner of the copyright, the validity and ownership of the copyright are not affected. In such a case, however, any person who innocently begins an undertaking that infringes the copyright has a complete defense to any action for such infringement if such person proves that he or she was misled by the notice and began the undertaking in good faith under a purported transfer or license from the person named therein, unless before the undertaking was begun—
>
> > 1) registration for the work had been made in the name of the owner of copyright; or
> >
> > 2) a document executed by the person named in the notice and showing the ownership of the copyright had been recorded.
>
> The person named in the notice is liable to account to the copyright owner for all receipts from transfers or licenses purportedly made under the copyright by the person named in the notice.

17 U.S.C. § 406(a).

Bagdadi argues that the innocent infringer defense is not applicable to Defendant Nazar because: 1) the work was not "publicly distributed"; 2) even if the initial distribution of the work was publicly distributed with Bagdadi's authority, the copy Nazar relied on was not distributed with Bagdadi's authority; and 3) Nazar did not act in good faith. Bagdadi also contends that the district court erred in granting summary judgment *sua sponte* for Linguex.

## I

### "Public Distribution" of English I

█ The first question before this court is whether Bagdadi "publicly distributed" the "English I" video when he provided it to Linguex for use in classrooms. "Publicly distributed" is not defined in the Copyright Act, but the parties agree that its definition is equated with "publication." Publication is defined as:

> [T]he distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies ... to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of work does not of itself constitute publication.

17 U.S.C. § 101.

Bagdadi argues that Bagdadi's initial distribution of "English I" to Linguex was not a public distribution because it was not offered to a "group of persons for purpose of ... public performance." Bagdadi reasons that his distribution to Linguex was a distribution to a single entity, not to a group. He contends that there is no authority supporting the proposition that employees of a single corporate distributee constitute a "group" within the meaning of the statute. He argues that the fact that the school is comprised of multiple people does not change the fact that the distribution was to a single entity.

Defendants, on the other hand, argue that the Linguex School constituted a "group of persons." The district court agreed with Defendants, stating:

> Linguex was an educational institution and the expense of producing a video was incurred not for personal use but for commercial use throughout the school by many teachers and students. Bagdadi's distribution to Linguex, therefore, was to a "group of persons."

█ No courts have decided the issue of whether a single entity comprised of multiple people constitutes a "group of persons" within the meaning of the statute. However, based on our interpretation of the plain statutory language, we agree with the district court that the Linguex School was a "group of persons." The Linguex School consisted of multiple teachers and students, and it was open to members of the public who wished to

engage in the study of English. This is very different than a distribution to one person in a closed setting. Therefore, we conclude that the school constituted a "group of persons."

■ Bagdadi also argues that showing a work in a private language school is not a "public performance." To perform or display a work "publicly" means to "perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered." 17 U.S.C. § 101. "One of the principal purposes of the definition was to make clear that ... performances in 'semi-public' places such as clubs, lodges, factories, summer camps, and schools are 'public performances' subject to copyright control." *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 866 F.2d 278, 281 (9th Cir.1989). The Linguex School was open to the public. The "English I" video was intended to be performed for students in a classroom setting. Thus, the video was distributed for the purpose of public performance.

Accordingly, we conclude that the copies of "English I" initially distributed by Bagdadi to Linguex were "publicly distributed" within the meaning of the Copyright Act.

## II

### Application of Innocent Infringer Defense to Nazar

■ Bagdadi argues that, even if this court finds that the initial sale of "English I" to Linguex was a public distribution, the § 406(a) defense does not apply to Nazar because: 1) the copy of "English I" relied on by Nazar was not an authorized copy; and 2) Nazar did not act in good faith.

**4.** Bagdadi's argument on this point appears to find support in the following passage from *Nimmer on Copyright* that describes one of the requirements for the innocent infringer defense: *Authorized Distribution by the Copyright Owner.* The improper copyright notice which misled the defendant must have appeared upon copies or phonorecords the public distribution of which was authorized by the true copyright owner. *If such distribution by the person named in the notice violated a condition contractually imposed upon such person by the true*

### A. Reliance on an Authorized Copy

Section 406(a) states in relevant part that:

> [W]here the person named in the copyright notice on copies ... publicly distributed by authority of the copyright owner is not the owner of the copyright, ... any person who innocently begins an undertaking that infringes the copyright has a complete defense to any action for such infringement if such person proves that he or she was misled by the notice and began the undertaking in good faith under a purported transfer or license from the person named therein....

17 U.S.C. § 406(a). Bagdadi contends that the innocent infringer defense would not apply to Nazar because the copy on which Nazar relied, which came from Linguex, was not an "authorized copy." Bagdadi reasons that he transferred to Linguex only the right to use the video in its classrooms, not to further sell the video to Nazar. As a result of Nazar's reliance on the erroneous copyright in an *un* authorized copy of "English I," Bagdadi asserts that the § 406(a) defense does not apply.

This argument misses the mark.[4] Bagdadi's interpretation would require that in order for the § 406(a) defense to apply, the purported transfer or license from the person named in the copyright (Linguex) to the person claiming innocent infringement (Nazar) would have to be authorized by the true copyright owner (Bagdadi). Such a rule would inappropriately shift the focus of the requirement of owner authorization from the initial public distribution, where it belongs, and render irrelevant the innocence of anyone relying in good faith on a misleading notice.

> copyright owner, then the distribution was unauthorized, and the Section 406(a) defense may not be claimed.

*Nimmer on Copyright* § 7.14[B][2][c] (emphasis added). Here, Bagdadi contends that the distribution by Linguex to Nazar violated a condition contractually imposed by Bagdadi and that the distribution was not authorized, thus precluding the application of the § 406 defense. However, we are not persuaded by Bagdadi's argument or by this section of *Nimmer*.

It is Bagdadi's authorization of the *initial* public distribution to Linguex that is the authorization required to constitute a copy "publicly distributed by authority of the copyright owner." A subsequent distribution to another party, such as that found in this case, is precisely the type of situation for which the innocent infringer defense was created. Thus, Bagdadi's reading of section 406(a) fails because it is inconsistent with the statute's plain language and irreconcilable with its manifest purpose.

### B. Nazar's Good Faith Reliance on the Copyright Notice

■ We next address whether the district court correctly concluded that Nazar was entitled to the innocent infringer defense as a matter of law. Bagdadi asserts that the good faith requirement of the innocent infringer defense imposed a burden of inquiry on Nazar because the name of the author of "English I" was different than the person named in its copyright notice. *See Quinto v. Legal Times of Wash., Inc.*, 506 F.Supp. 554, 562–63 (D.D.C.1981); *Nimmer on Copyright* § 7.14[B][2][b]. Bagdadi argues that, at the very least, issues of fact remain regarding the reasonableness and good faith of Nazar's reliance on the erroneous copyright notice.

In *Quinto*, the *Legal Times of Washington* (*Legal Times*) had reprinted an article from the *Harvard Law Record* that was written by Quinto. More than nine months before reprinting the Quinto article, a previous editor of the *Harvard Law Record* had given the *Legal Times* oral permission to reprint materials. When Quinto's article was published, the *Harvard Law Record*'s masthead had a general copyright notice. Quinto's article did not have an individual copyright, but it stated his name as the author.

When Quinto sued for copyright infringement, the *Legal Times* claimed to be an "innocent infringer." In ruling against the *Legal Times*' innocence, the court observed:

It is difficult to imagine how the notice could have been so misleading that [the defendant] did not even have a duty to inquire who owned the copyright in the article, since the article clearly bore [plaintiff's] name. In fact, it might even be argued that ambiguity as to who owned the copyright—which arose because of the blanket notice—*increased* [defendant's] duty to inquire about ownership.... At a minimum, [defendant] had a duty to inquire whether the *Record* owned the copyright to [plaintiff's] article in order to claim he was misled and acted in good faith.

506 F.Supp. at 563. The court concluded as a matter of law that the *Legal Times* had breached its duty of inquiry and had not acted in good faith. The court in *Quinto* acknowledged that "good faith" is generally a question of fact, but decided that the facts weighed so heavily in Quinto's favor, and against the *Legal Times*' good faith or innocent infringement, that Quinto was entitled to summary judgment.

Bagdadi contends that the "English I" video presented a similarly ambiguous copyright because the copyright notice was in Linguex's name, but the credits listed Bagdadi as writer, producer, and director. Bagdadi argues that, based on *Quinto*, Nazar had a duty to inquire about the copyright's ownership in order to claim he was misled and acted in good faith.

*Quinto*, however, depends heavily on its facts and is distinguishable. *Quinto* involved a copyright notice on a newspaper, which compiled a collection of works by different authors. The nature of such a joint collection communicates the possibility, or even the likelihood, that copyright ownership of the separate works may vary. The masthead copyright notice protects the collection of articles from violation by outsiders, but does not indicate the copyright ownership rights between the authors and the newspaper.

Here, in contrast, the work at issue was a single instruction video with one copyright notice and one author. The copyright notice clearly identified Linguex as the owner, stating "Copyright 1984 by Linguex International Limited, All Rights Reserved." The notice could not have been more unambiguous, regardless of its accuracy. Therefore, an outside party reasonably could have been misled to believe that Linguex did in fact own the copyright and all of the rights thereunder.

■ We are not willing to extend *Quinto* to impose a duty of inquiry anytime the copyright notice is in the name of someone different than the named author in order for an infringer to claim good faith reliance on the copyright. Here, although the copyright owner and the author were different, copyright ownership was not unclear as it was in *Quinto.* Instead, the copyright notice was specific and unambiguous, stating that Linguex reserved *all* of the rights under the copyright. Thus, Nazar had no reason to believe that Bagdadi, as the author, had licensed only the right to perform the work in the Linguex School and had reserved to himself the right to sell the work. Therefore, Nazar acted reasonably when he was misled by the unambiguous copyright notice and when he contracted with Linguex to sell the "English I" video.

As such, the facts of this case do not raise a genuine issue of material fact as to Nazar's good faith. Nazar relied on the unambiguous copyright notice, and Bagdadi has not brought forward sufficient evidence to present a question of fact as to the reasonableness or good faith of that reliance. Therefore, we affirm the district court's grant of summary judgment in Nazar's favor based on the innocent infringer defense.[5]

### III

### Sua Sponte Dismissal of Linguex

■ Linguex did not join in Nazar's motion for summary judgment. However, in granting summary judgment for the other defendants, the district court *sua sponte* granted summary judgment to Linguex. The court stated, without explanation, that:

> On the innocent infringement issue, it appears that all defendants are similarly situated. Therefore, since the issue has been fully ventilated, the court *sua sponte*

grants summary judgment to all remaining defendants as well.

We disagree and find that the district court erred in granting *sua sponte* summary judgment for Linguex.

Defendants Nazar and Linguex were not similarly situated. Linguex directly contracted with Bagdadi for the "English I" video, Nazar did not. Bagdadi alleges different infringements by separate parties: 1) Linguex's infringement when it sold copies of the "English I" video to Nazar and, later, when Linguex collected royalties based on Nazar's sales; and 2) Nazar's infringement when it sold copies of "English I" to the general public and showed portions of it in infomercials. These were distinct infringements, and the parties relationships with Bagdadi were very different.

As a direct party to the licensing agreement with Bagdadi, Linguex was in a much better position than Nazar to know the nature of the rights that had been transferred and to know whether it had the right to sell the video to Nazar. For purposes of the motion for summary judgment, this court has assumed that Bagdadi is the owner of the copyright, that Bagdadi's agreement with Linguex was a limited license to utilize the work in a classroom context only, and that Linguex had no authority to sell copies of the work. Bagdadi pointed out that Linguex sent Bagdadi a copyright release form, to which Bagdadi objected and which he sent back with changes. The copyright matter apparently was never resolved, and no copyright transfer formally took place. Thus, based on these facts, it appears that Linguex had some knowledge that it was not the owner of all of the divisible rights under the copyright.

In conclusion, we hold that the district court erred in finding the Defendants "similarly situated" for purposes of the innocent

---

5. The district court emphasized the fact that Bagdadi himself placed the unambiguous copyright notice on the video and failed to object to the use of the video by Nazar when he visited the Lexicon School in 1988. However, we note that the fact that Bagdadi himself put the copyright notice on the video is irrelevant to a finding of Nazar's good faith and innocent infringement. That fact would be relevant to copyright owner-

ship, which is not at issue here. As to Bagdadi's failure to object to Nazar's display of the video at the Lexicon school, Bagdadi explains that he felt that Lexicon School was using the video in compliance with the license for classroom use which Bagdadi had granted Linguex. However, this line of inquiry goes to the issue of equitable estoppel, which is not before this court.

infringer defense and in *sua sponte* granting summary judgment to Linguex. Material issues of fact remain about Bagdadi's and Linguex's rights under their initial agreement, and about whether Linguex acted in good faith reliance on the copyright notice. Therefore, we remand to the district court for further proceedings on Bagdadi's asserted claims of copyright infringement against Linguex.[6]

**Affirmed in part; reversed in part.**

The parties shall bear their own costs of this appeal.

---

6. Linguex also argues that Bagdadi's complaint is one for contract damages and inappropriate for federal question jurisdiction insofar as it seeks recovery for revenue derived from the sale of the video. This would be true if Bagdadi had transferred the right to sell the work, and then Linguex violated Bagdadi's contractual right to receive royalties from those sales. However, based on the facts before this court, Bagdadi owned the copyright and Linguex had a only a limited license, which did not include the right to sell the video. Therefore, Linguex's action is properly one for copyright infringement, not merely for breach of contract.