108 F.3d 338
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LAURANT BEVERLY HILLS; FMC Consolidated Limited; J.
Vincent O'Keefe; Alan R. Sporn, Plaintiffs-Appellants,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 No. 95-56085.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 11, 1996.*
Decided Dec. 17, 1996.
 
 Before: PREGERSON, D.W. NELSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Laurant Beverly Hills, FMC Consolidated Limited, J. Vincent O'Keefe, and Alan R. Sporn ("Laurant") appeal the district court's grant of summary judgment in favor of the Ford Motor Company ("Ford") on claims concerning the sale of 500 Ford Explorers to the CITIC Trading Company ("CITIC"). Laurant has preserved three claims on appeal: (1) breach of contract; (2) fraud/negligent misrepresentation; and (3) interference with prospective economic advantage.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 On January 21, 1994, Laurant requested a price quotation from Ford on a proposed purchase of 500 Ford Explorers. Shortly thereafter, Laurant disclosed that it was acting as the agent of Giant Sources, which had been authorized to purchase vehicles for the Chinese Military Police ("CMP"). On January 24, 1994, Ford responded with a quotation and an explanation that a Ford-approved letter of credit was required before the sale could be consummated. Laurant never tendered an order or an acceptable letter of credit to Ford. On February 1, 1994, Stanley Wong also requested a quotation on a proposed purchase of 500 Ford Explorers for export to China. On February 2, 1994, CITIC acknowledged that Wong was its agent and tendered a letter of credit for the sale. Negotiations between Ford and CITIC continued for two weeks and resulted in the sale by Ford of 500 Explorers to CITIC.
 
 STANDARD OF REVIEW
 
 4
 A grant of summary judgment is subject to de novo review. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996); Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). This court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Bagdadi, 84 F.3d at 1197; Warren, 58 F.3d at 441.
 
 BREACH OF CONTRACT
 
 5
 Laurant claims that Ford breached an alleged contract with Laurant for the sale of 500 Explorers or, alternatively, for commission payments associated therewith. This claim fails because no written contract existed between Ford and Laurant, Laurant's Hong Kong partner (FMC), or Laurant's principal (Giant Sources), for either the sale of 500 Ford Explorers or for commissions associated with such sale. Laurant admits this fact, but contends that the letter of credit issued by CITIC somehow constitutes an agreement between Laurant and Ford, and thereby satisfies the writing requirement of the statute of frauds.
 
 
 6
 Laurant's reliance upon this letter of credit is utterly misplaced. The letter of credit that was enforced as a contract in Procyon Corp. v. Components Direct, Inc., 203 Cal.App.3d 409 (Ct.App.1988), contained all of the material terms of the deal, including, of course, the identity of the contracting parties. The letter of credit upon which Laurant relies also contains the material terms of the deal; but this deal is expressly between Ford and CITIC. The letter of credit does not even mention Laurant, nor does it refer to commissions.[2]
 
 
 7
 Laurant also argues that it "arranged" for the issuance of the first CITIC letter of credit, and that this somehow placed Laurant in privity with Ford. Laurant presents no evidence to support this legal conclusion, but merely asserts that "it was virtually impossible for anyone other than plaintiffs to have initiated the L/C for this deal based on the timing of the direct contacts between CITIC and Ford." Even if we assume the truth of this argument, we fail to see how Laurant's initiation of the CITIC letter of credit created an enforceable contract between Laurant and Ford. Laurant acknowledged that this first letter was defective, and it admitted that it played no role in the subsequent negotiations between Ford and CITIC that resulted in the issuance of the valid letter of credit.
 
 
 8
 In sum, there was no enforceable contract of any kind between Laurant and Ford. Therefore, the district court was correct to grant summary judgment to Ford on Laurant's breach of contract claim.
 
 FRAUD/NEGLIGENT MISREPRESENTATION
 
 9
 Laurant claims that Ford engaged in fraud or negligent misrepresentation when Michael Berry, a Ford employee, transmitted a quotation to Stanley Wong that was identical to the quotation that Ford had previously provided to Laurant. Laurant asserts that this action violated Berry's promise to Laurant that "[t]he information you [Laurant] furnished us [Ford] was kept confidential and was not given to any other party."
 
 
 10
 Berry never broke this promise. The only information that Laurant furnished to Ford--and thus the only information that Berry promised not to disclose--was the specifications of the vehicles on which Laurant requested a quotation. Berry provided Wong with a price quotation, not vehicle specifications. And this quotation was identical to the price that Ford had quoted Laurant because the specifications provided by Laurant and Wong were themselves identical.
 
 
 11
 Laurant has failed to present any evidence of a false assertion of fact by Ford. Therefore, the district court was correct to grant summary judgment to Ford on Laurant's fraud and negligent misrepresentation claims.
 
 
 12
 INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
 
 
 13
 Finally, Laurant's interference with prospective economic advantage claim fails because Laurant has not presented any evidence demonstrating Ford's intent to interfere with Laurant's business relationships. Laurant's claim demands that we accept two premises: (1) Laurant had a business relationship with the CMP, and (2) Ford intentionally interfered with that relationship when it pushed Laurant aside and dealt directly with the CMP.
 
 
 14
 Neither premise withstands scrutiny. While Laurant evidently had some contact with officers of the CMP, Laurant disclosed to Ford that it was the agent of Giant Sources, which was authorized to purchase vehicles for the CMP. Laurant was not the agent of the CMP. Second, Ford consummated the Explorer deal with CITIC, not the CMP.[3] Ford apparently knew that the CMP was to be the end-user of the vehicles. But even if we assume that such knowledge might create an inference of intent to sell to the CMP, this inference does not constitute the "strong showing of intent" necessary to state a claim of intentional interference under California law. See Rickards v. Canine Eye Registration Found., Inc., 704 F.2d 1449, 1456 (9th Cir.), cert. denied, 464 U.S. 994 (1983); DeVoto v. Pacific Fidelity Life Ins. Co., 618 F.2d 1340, 1347 (9th Cir.) ("The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability."), cert. denied, 449 U.S. 869 (1980). The evidence before us indicates that Ford's specific intent was to sell to the first viable purchaser, not to injure Laurant (which had never become a viable purchaser because it had never tendered an acceptable letter of credit to Ford). Therefore, the district court was correct to grant summary judgment to Ford on Laurant's intentional interference claim.
 
 THE ADDONIZIO DECLARATION
 
 15
 In its briefs before this court, Laurant focuses on a peripheral issue: Laurant argues that the district court was wrong to rely upon the Addonizio declaration when it granted Ford's motion for summary judgment because (1) the declaration is inconsistent with Addonizio's prior deposition testimony, and (2) the declaration is not based on personal knowledge and it contains inadmissible hearsay. Laurant claims that because this declaration provides the only evidence of the "undisputed" facts supporting Ford's motion for summary judgment, the summary judgment order must be reversed.
 
 
 16
 In fact, the Addonizio declaration is not the only evidence supporting Ford's motion for summary judgment. Rather, the material statements of fact contained in the Addonizio declaration are corroborated by the independent and unchallenged deposition testimony of various Ford and Laurant officials. Thus, even if we disregard the challenged portions of Addonizio's declaration, the fact remains that Ford has carried its initial burden of establishing the absence of a genuine issue for trial, and Laurant has not produced any credible evidence to support its claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Indeed, the district court appears to have disregarded the Addonizio declaration when it granted summary judgment to Ford; there is nothing in the court's tentative ruling or final order to indicate that it relied upon the declaration in reaching its decision.
 
 
 17
 In any event, we are unable to find any statement in the Addonizio declaration that directly contradicts a material aspect of Addonizio's earlier deposition testimony. Furthermore, Addonizio established that he had personal knowledge of the events and transactions to which he refers in his declaration. The mere fact that he was out of the country during the time that these events took place does not indicate that he lacks personal knowledge of them. See Washington Cent. R. Co. v. National Mediation Bd., 830 F.Supp. 1343, 1353 (E.D.Wash.1993) (personal knowledge not limited to activities in which declarant personally participated; such knowledge may come from review of pertinent files and records). Finally, the documents to which Addonizio refers in his declaration are admissible. They have been properly authenticated by Addonizio, pursuant to Fed.R.Evid. 901(b)(1). Any hearsay contained in the documents prepared in the ordinary course of Ford's business operations is admissible under the business records exception to the hearsay rule, see Fed.R.Evid. 803(6), because Addonizio established a proper foundation for these documents. And any hearsay contained in the documents prepared by plaintiffs or their representatives is admissible as an admission by a party-opponent. See Fed.R.Evid. 801(d)(2). Thus, while Laurant's objection to the Addonizio declaration is immaterial, it is also without merit.
 
 CONCLUSION
 
 18
 For the foregoing reasons, the district court's judgment is AFFIRMED.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Laurant has abandoned its remaining claims by not raising and arguing them on appeal. See Officers for Justice v. Civil Serv. Comm'n of S.F., 979 F.2d 721, 726 (9th Cir.1992), cert. denied, 507 U.S. 1004 (1993)
 
 
 [2]
 Indeed, Laurant's direct request for a commission was expressly rejected by Ford
 
 
 [3]
 Ford's direct dealings with CITIC, which were initiated when Stanley Wong approached Ford, cannot form the basis for Laurant's intentional interference claim. Although Laurant alleges that Giant Sources had the backing of CITIC, Laurant never presented any evidence to substantiate this claim. Furthermore, Laurant expressly denied having any direct relationship with CITIC