122 F.3d 1071
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
IDAHO SPORTING CONGRESS, INC., Plaintiff-Appellant,
v.
UNITED STATES FOREST SERVICE, an agency of the U.S. Dept. of
Agriculture, Defendant-Appellee,
and
Intermountain Forest Industry Association, Intervenor.
 No. 97-35146.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Aug. 8, 1997.
Decided Aug. 21, 1997.
 
 Appeal from the United States District Court for the District of Idaho B. Lynn Winmill, District Judge, Presiding
 Before: WRIGHT, D.W. NELSON and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Service argues that we lack jurisdiction and that its decision to wait until the year 2000 to revise the LRMPs was not arbitrary and capricious. The district court granted the Service summary judgment on the merits, and we affirm.
 
 
 3
 * We review de novo an order of summary judgment. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We review under the deferential "arbitrary and capricious" standard, however, the Forest Service's decision to postpone preparing Supplemental Environmental Impact Statements ("SEISs"). 5 U.S.C. § 706(2)(A); Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 375-76 (1989); Headwaters, Inc. v. Bureau of Land Management, 914 F.2d 1174, 1177 (9th Cir.1990).
 
 
 4
 The Service does not act arbitrarily and capriciously when it takes a "hard look" at all relevant facts. Marsh, 490 U.S. at 374; Laguna Greenbelt, Inc. v. U.S. Dept. of Transp., 42 F.3d 517, 529 (9th Cir.1994). Plaintiff's argument that the hard look doctrine does not apply is groundless. We find the distinction between a decision that changed circumstances do not warrant an SEIS (which is clearly subject to the "hard look" doctrine) and a failure to draft an SEIS despite changed circumstances (which plaintiff says warrants de novo review) to be illusory. See Marsh, 490 U.S. at 376.
 
 
 5
 In determining whether the Service has taken a "hard look" at the relevant facts, we employ the "rule of reason." Swanson v. U.S. Forest Service, 87 F.3d 339, 343 (9th Cir.1996). This standard examines whether the Service has made a "reasoned evaluation of the relevant factors," Oregon Natural Resources Council v. Lyng, 882 F.2d 1417, 1422 (1989), amended 889 F.2d 1565 (9th Cir.1990), whether it has relied on the technical expertise of those charged with management of the forests, Laguna Greenbelt, 42 F.3d at 529, and the degree of care that it has employed relative to the significance of the new circumstances or information, Warm Springs Dam Task Force v. Gribble, 621 F.2d 1017, 1024 (9th Cir.1980). As long as the Service offers "a reasonably thorough discussion of the significant aspects of the probable environmental consequences" of its action, the standard is satisfied; we need not "fly-speck" the record. Swanson, 87 F.3d at 343.
 
 
 6
 The Service decided to revise the Land Resource Management Plan ("LRMP") by the year 2000 after extensive studies of the burned forest areas by several groups ot experts. While the fires still burned, emergency rehabilitation teams examined both forests and implemented extensive postfire recovery measures. Boise conducted special ecosystem and watershed analyses, and Payette created special guidelines for timber harvest projects, and adjusted sales in non-significant ways to reflect changed conditions.
 
 
 7
 Next, three Landscape Analysis Teams studied the most seriously burned areas. Each completed a 200-300 page public report. And in January 1995, scientists from both forests formed a Broadscale Analysis Team to study the fires' impact over a 1.18 million acre region. The team compiled two reports, one of which was made public and the other of which summarized the findings for internal purposes. These reports examine the fires' effects on soil, riparian areas, tree mortality, vegetation, animal habitat, cultural resources, recreation, and local economies.
 
 
 8
 Finally, the Service issued Five-Year Monitoring and Evaluation Reports for both forests. The reports found little risk of long-term effects in riparian areas and no expected alteration in "the natural hydrologic or geomorphic regime" in watershed areas. In fact, two sources suggest that the fires actually met previously forecasted burning needs.
 
 
 9
 In light of the reports, advances in scientific knowledge, and a stipulated settlement of separate litigation involving Payette, the Service initiated a revised, consolidated LRMP for both Boise and Payette, under the name Southwest Idaho Ecogroup, to be completed by 2000. Several of the reports and individual scientists recommended revision, but none set a deadline prior to 2000. "The Forest Supervisor explained that in light of the need to address several areas, 'a piecemeal approach of completing individual amendments to address changed conditions is not an effective approach to responsible land and resource stewardship in light of limited personnel and funding.' " Foss Decl. p 3 (quoting Forest Supervisor's Response to Monitoring Report).
 
 
 10
 Plaintiff relies on isolated language from Service documents indicating that the changes caused by the fires were "significant." Neither NEPA nor NFMA, however, requires the court to base its decision solely on the use of that term. On the contrary, it would violate the "rule of reason" to consider that term in a vacuum.
 
 
 11
 On the whole, the Service did not act arbitrarily and capriciously in concluding that the reports do not show a compelling need for immediate revision. Indeed, the Service anticipated forest fires when it prepared the original LRMPs and EISs, and the 1994 fires did not deviate dramatically from those expectations. The record includes reports and statements addressing fire risk in the parks and the declaration of a Payette Process Manager that the fires "were mostly within the range of historic variation, and caused no severe or permanent destruction to ecosystem components." See also Laquna Greenbelt, 42 F.3d at 530 ("Fires are natural occurrences.... The EIS takes the occurrence of fire into account and existing mitigation measures in the EIS consider the possibility of fire.").
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3