125 F.3d 859
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
THE TOKAI BANK, Limited, New York Branch, Plaintiff-Appellant,
v.
CHICAGO TITLE INSURANCE COMPANY, Defendant-Appellee.
 No. 95-56671.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 10, 1997.
Decided Oct. 7, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, No. CV-94-1232-AWT; A. Wallace Tashima, Circuit Judge, Presiding.
 
 
 2
 Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 I. OVERVIEW
 
 4
 The Tokai Bank, Limited, New York Branch ("Tokai") was the secured lender for the construction of the Park Hyatt Santa Monica Beach Hotel (the "Project"). Tokai obtained title insurance from Chicago Title Insurance Company ("Chicago Title") to protect its loan from, among other things, mechanic's liens held by the contractors for the Project. When the developer experienced financial troubles and eventually sought to reorganize under Chapter 11 of the Bankruptcy Code, the contractors filed mechanic's liens totalling over $20 million. Chicago Title defended Tokai in actions regarding these mechanic's liens, but it reserved its right to later disclaim coverage. Tokai eventually supported the sale of the Project through the Bankruptcy Court for $18.75 million. Tokai contends that the Project was probably worth approximately $27 million because the costs necessary to complete the Project had been overstated.
 
 
 5
 Tokai brought a bad faith action against Chicago Title for refusing to acknowledge coverage or clear the liens against the Project. The district court granted summary judgment to Chicago Title in the bad faith action, holding that any damages suffered by Tokai due to the sale of the Project were caused by the faulty appraisals of the Project and not by the bad faith, if any, of Chicago Title. Tokai appealed.
 
 
 6
 We review the grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Because Tokai is the nonmoving party, we view the evidence in the light most favorable to it. See id. We affirm the judgment of the district court.
 
 II. FACTUAL BACKGROUND & PROCEDURAL HISTORY
 
 7
 In January, 1990, Tokai loaned Santa Monica Beach Hotel, Ltd. ("SMBH") $66.65 million (the "Original Loan") for the construction of the Project. The Original Loan was to be used to finance the construction of the Project under a $24 million fixed-price construction contract between SMBH and general contractor Gosnell Builders ("Gosnell"). Repayment of the Original Loan was secured by various forms of collateral and guarantees from SMBH, a First Deed of Trust against the Project, and Payment and Performance Bonds issued by Fireman's Fund Insurance Company.
 
 
 8
 On January 11, 1990, Chicago Title issued to Tokai ALTA Loan Title Policy No. 008900795-73 (the "Title Policy") which insured the priority of the Deed of Trust. The Title Policy, a contract of indemnity, requires Chicago Title "at its own cost and without unreasonable delay [to] provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured." The Title Policy further provides that Chicago Title will indemnify "against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reasons of matters insured against by this policy."
 
 
 9
 The Title Policy obligated Chicago Title to defend Tokai against mechanic's lien claims asserting priority over Tokai's Deed of Trust, subject to certain terms and conditions in the Title Policy. However, Chicago Title had no indemnity obligation under the Title Policy for mechanic's liens arising from work not paid at least in part from the proceeds of the Original Loan. Chicago Title also had no obligation to defend or indemnify Tokai for any mechanic's lien claims "created, suffered, assumed or agreed to" by Tokai.
 
 
 10
 SMBH, Gosnell, and Tokai had a series of disputes regarding cost overruns, pay requests, defective work, and delays. Gosnell was eventually replaced and the Tishman Construction Company ("Tishman") was retained to perform its work. Disputes arose between Tishman, SMBH, and Tokai as to whether Tokai would provide sufficient additional funding to complete the project. When it became apparent that there would not be enough funds to complete the project, Tishman and the contractors it had retained (collectively the "Tishman Contractors") walked off the project. Gosnell and the contractors it had retained recorded liens totalling approximately $13 million for work performed on the Project. The Tishman Contractors recorded liens totalling approximately $9 million for the work they had performed on the Project.
 
 
 11
 Tokai tendered the actions brought by the Tishman Contractors to Chicago Title, requesting that, under the Title Policy, Chicago Title defend and indemnify Tokai against these mechanic's liens. Chicago Title retained Brown & Brown to defend Tokai with respect to all causes of action seeking to foreclose mechanic's liens. In October 1991, Chicago Title retained counsel to review its coverage obligations to Tokai. Three months later, in January 1992, Chicago Title issued a Reservation of Rights letter wherein it reserved its right to deny any indemnity obligation for the lien claims, including other claims which were still being tendered by Tokai, based upon the possibility that the Title Policy contained exclusions which might apply to the foreclosure actions by the various contractors.
 
 
 12
 By the summer of 1991, Tokai considered various alternative courses of action, including: 1) recording a notice of default followed by a non-judicial foreclosure; 2) providing additional financing for the Project; 3) finding an equity partner to complete the Project; or 4) negotiating a deed in lieu of foreclosure from SMBH. In August 1991, Tokai recorded a notice of default and instituted an action for judicial foreclosure. In response, SMBH filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. In this context, Tokai considered other options including: 1) seeking to lift the automatic stay and proceeding with its foreclosure; 2) providing debtor-in-possession financing to SMBH to complete the Project; or 3) finding a buyer for the Project in its unfinished state and selling the property free and clear of all liens to that buyer pursuant to § 363 of the Bankruptcy Code, 11 U.S.C. § 363 (1994). Tokai contends that the only feasible option at that time was the § 363 sale because Chicago Title's reservation of its right to later disclaim coverage for the mechanic's liens made any other option too risky. Moreover, the existence of the liens and the lack of assurance of coverage by Chicago Title purportedly limited Tokai's bargaining position because Tokai could not risk outbidding a buyer while it faced over $20 million in potential senior liens.
 
 
 13
 In an effort to evaluate the prospects of conducting a § 363 sale, Tokai received estimates of the value of the unfinished Project from at least three sources. Tokai's appraiser, Panell Kerr Foster ("PKF") valued the property at between $13 million and $18.4 million. Grubb & Ellis had prepared an appraisal for SMBH which valued the unfinished Project at $8.4 million. Morgan Stanley valued the Project for Tokai at between $12 million and $22 million.
 
 
 14
 ET Santa Monica Partners ("ETSM") was willing to purchase the property for $18.75 million. On March 27, 1992, ETSM, SMBH and Tokai entered into an agreement whereby ETSM would buy the Project for $18.75 million pursuant to Bankruptcy Court approval under 11 U.S.C. § 363. Tokai supported the sale during the bankruptcy proceedings, and the sale was approved. The Bankruptcy Court will not disburse the proceeds of the sale until the dispute over the lien priorities are resolved. Shortly thereafter, Tokai instituted a declaratory relief action in Los Angeles Superior Court against Chicago Title to determine whether the mechanic's liens were covered under the Title Policy. Chicago Title removed the action to federal court.
 
 
 15
 In January, 1994, Tokai hired new counsel who filed a separate action in Los Angeles Superior Court, which was also removed to the district court, claiming that Chicago Title had breached the implied covenant of good faith and fair dealing in its handling of Tokai's claim. This bad faith action is the case before us. Tokai made various assertions detailing bad faith on the part of Chicago Title. Relevant to this appeal are Tokai's claims that Chicago Title's failure to "clear liens" or "acknowledge coverage" for the mechanic's liens amounted to bad faith which purportedly damaged Tokai in the amount of $8 million.
 
 
 16
 The PKF and Morgan Stanley appraisals prepared for Tokai in connection with the sale to ETSM for $18.75 million incorporated estimates by Tokai regarding the cost to complete the Project. Tokai had estimated the cost to complete at $20-22 million. However ETSM was able to complete construction for approximately $8-10 million less.
 
 
 17
 Thus, Tokai contends that the Project had in fact been worth between $8 and $10 million dollars more than the $18.75 million sale price to ETSM. This contention was based on the difference between the estimated cost to complete the Project in the appraisals, and what ETSM actually spent to complete the Project. Tokai asserts that this figure represented its damages as a result of the sale. Tokai argues that, had Chicago Title not acted in bad faith when it failed to "clear liens" or "acknowledge coverage," Tokai would have either chosen an alternative to the sale to ETSM or would have been able to bid ETSM up to a higher price.
 
 
 18
 In granting summary judgment to Chicago Title, the district court did not reach the issue of whether Tokai had established bad faith because it held that any bad faith was not the cause of Tokai's damages. Rather, as a matter of law, any damages Tokai suffered were caused by the faulty appraisals.
 
 
 19
 To prove that the faulty appraisals caused Tokai to support the sale to ETSM, Chicago Title pointed to a declaration Tokai itself had submitted, made by Tokai's valuation expert Neil Freeman. Freeman stated in his declaration that the "costs to complete the Project used in the appraisals were overstated and if more accurate estimates were used a higher value for the Project would have resulted." Tokai also submitted papers to the Bankruptcy Court in support of the § 363 sale, in which it stated that the "proposed sale price is reasonable in light of the recent appraisal...."
 
 III. DISCUSSION
 Causation
 
 20
 In the case at hand, the district court did not reach the issue of whether there was sufficient evidence of bad faith to allow the case to go to a jury. The district court's holding was limited to the issue of whether Tokai could prove that its damages, assuming there were damages, were caused by Chicago Title's alleged bad faith, and not by the faulty appraisals. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The district court stated that "the low price paid for the Project was not the result of Chicago Title's actions, but rather faulty appraisals by third parties." Tokai claims on appeal that this was an improper inference by the district court. Tokai's claim is that uncertainty regarding coverage of the mechanic's liens limited its options both before and after the bankruptcy filing by SMBH, and that with greater options available to it, Tokai would have been able to procure eight million dollars more for the Project, either by bidding up the price, or by putting more funding into the Project.
 
 
 21
 Assuming, as the district court did, that Chicago Title did act with bad faith, Tokai still cannot prevail because any damages suffered by Tokai were not caused by such bad faith. The district court correctly stated the rule that "[w]hile proximate or legal causation normally presents an issue for the trier of fact to resolve, both California and federal law recognize that where causation cannot reasonably be established under the facts alleged by a plaintiff the question of proximate cause is one for the court." Benefiel v. Exxon Corporation, 959 F.2d 805 (9th Cir.1992). The district court relied on the declaration of Neil Freeman in support of Tokai, which stated that the "costs to complete the Project used in the appraisals were overstated and if more accurate estimates were used a higher value for the Project would have resulted." Moreover, the appraisals indicate that Tokai provided the appraisers with inaccurate estimates of the cost to complete the Project. Consequently, the court reasoned that Tokai's own evidence established that the appraisals, and not Chicago Title's bad faith, were the cause of any damages incurred by Tokai.
 
 
 22
 We agree. First, Tokai relied upon the appraisals of the project which it now claims are inaccurate. Tokai's evidence suggests that more accurate cost projections and project value estimates would have dissuaded Tokai from pursuing the § 363 sale. Instead, Tokai did support the sale and referred the bankruptcy court to the appraisals as reason for supporting the sale. Therefore, the cause of any damages which Tokai has shown were caused by the faulty appraisals.[1] Moreover, Mr. Muto, the deputy general manager for Tokai, admitted quite clearly that there was only one bidder and that he wasn't even thinking about the title insurance in connection with his decision to sell. Therefore, Tokai's theory that its strategy would have been different had Chicago Title acknowledged coverage or cleared the liens is unsubstantiated. Consequently, we hold that Tokai has failed to show that Chicago Title's decision to reserve its rights caused any damages suffered by Tokai in the § 363 sale of the Project.
 
 Discovery
 
 23
 Tokai asserts that the summary judgment motion was granted while discovery orders were still outstanding. According to Tokai, the outstanding discovery was crucial to its understanding of Chicago Title's procedure for handling claims. However, the discovery requests are irrelevant because they relate to Chicago Title's alleged bad faith and not to the causation issue upon which this appeal turns. Therefore, the district court did not err in deciding the summary judgment motion while the discovery requests were pending.
 
 
 24
 AFFIRMED.
 
 
 
 **
 The Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 More accurately, the damages may have been Tokai's own fault because the error in the appraisals resulted from understated costs to complete the project which Tokai provided to the appraisers