141 F.3d 1179
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, ex rel. Theodore R. Anderson,
Plaintiff-Appellant,
v.
NORTHERN TELECOM INC., a Delaware corporation, Defendant-Appellee.
 No. 96-36152.
D.C. No. CV-90-00231 BJR.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1997.
Decided Mar. 27, 1998.
 
 1
 Appeal from the United States District Court for the Western District of Washington Barbara J. Rothstein, District Judge, Presiding.
 
 
 2
 Before FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,** Senior District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Qui tam relator Theodore Anderson appeals the district court's summary judgment on remand in favor of Anderson's former employer, Northern Telecom, Inc. ("NTI"), in Anderson's "whistleblower" action under the False Claims Act, 31 U.S.C. § 3729, et seq. Anderson alleges that NTI knowingly sold defective telecommunications switching systems to the United States, including branches of the military. We affirm.
 
 
 5
 * This dispute arises out of a series of contracts between NTI and the military for the purchase of NTI's digital telecommunications switching systems, called "switches." NTI's switches are room-sized pieces of equipment that handle high-speed automated switching of telephone calls.
 
 
 6
 Anderson is a former employee of NTI. In 1988, he informed the FBI that NTI had submitted claims for switches provided to the government even though NTI allegedly knew the switches failed to meet certain contractual requirements. In 1990, Anderson filed a complaint under the qui tam provisions of the False Claims Act. The government declined to intervene.
 
 
 7
 Although Anderson alleged violations at a large number of civilian and military government installations, the district court limited discovery to nine representative military bases. Anderson did not object to this procedure, and selected seven representative bases. These bases included: Andrews, Crane, Falcon, Fort Monmouth, Langley, Letterkenny, and Scott.
 
 
 8
 In 1993, the district court granted summary judgment in favor of NTI, dismissing all seven claims. The six claims involving bills submitted by NTI before 1986 were dismissed by the district court on jurisdictional grounds. The remaining claim, which involved bills submitted for the Letterkenny switch after 1986, was dismissed on the ground that Anderson had failed to establish a prima facie case that NTI had knowingly submitted a false claim.
 
 
 9
 Anderson appealed. In United States ex rel. Anderson v. Northern Telecom Inc., 52 F.3d 810 (9th Cir.1995) ("Anderson I "), this court reversed and remanded in part and affirmed in part. The court affirmed the district court's dismissal of the claim involving the Letterkenny switch. See Anderson I, 52 F.3d at 815-17. However, the court reversed the district court's dismissal on jurisdictional grounds of the six pre-1986 claims. The court held that the district court should have applied the amended version of the False Claims Act to determine whether it had jurisdiction, rather than the pre-1986 version. See id. at 815. The court remanded for a determination of whether jurisdiction could be exercised under the amended version of the statute. See id.
 
 
 10
 On remand, the district court again granted summary judgment in favor of NTI. The district court concluded that "[t]here is evidence in the record that the military had problems with the switches and the court, therefore, will assume for purposes of this [summary judgment] motion that they were defective." Nevertheless, the court held that it was "dispositive" that the military tested "and, therefore, would have known" of the alleged defects in the switches when NTI submitted claims for payment.
 
 II
 
 11
 A grant of summary judgment is reviewed de novo. See Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996); Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The appellate court must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See Bagdadi, 84 F.3d at 1197; Warren, 58 F.3d at 441. The court may affirm summary judgment on an alternative ground to that given by the district court, so long as the record fairly supports such an alternative disposition. See Fidelity Fin. Corp. v. Federal Home Loan Bank, 792 F.2d 1432, 1439 (9th Cir.1986).
 
 
 12
 The False Claims Act, 31 U.S.C. § 3729, et seq., authorizes individuals, known as "relators," to bring civil suits, known as "qui tam actions," against persons who present false claims to the government. See 31 U.S.C. § 3730. The False Claims Act specifies several types of activity that will give rise to liability. The Act makes liable any person who has knowingly presented or caused to be presented a false or fraudulent claim, 31 U.S.C. § 3729(a)(1), or has knowingly made, used or caused to be made or used a false record or statement to get a false or fraudulent claim paid, 31 U.S.C. § 3729(a)(2), or has conspired to defraud the government by getting a false or fraudulent claim paid, 31 U.S.C. § 3729(a)(3).
 
 
 13
 When a qui tam action is filed, the government may either allow the relator to retain control over the litigation, as it did in this case, or elect to proceed with the action itself. See 31 U.S.C. § 3730(b). Before the False Claims Act was amended in 1986, when the government did not elect to proceed with the action itself, dismissal was required if the action was based on evidence the government already had in its possession when the lawsuit was filed:
 
 
 14
 Unless the Government proceeds with the action, the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought.
 
 
 15
 31 U.S.C. § 3730(b)(4)(1982).
 
 
 16
 If the pre-1986 version of the False Claims Act applied, Anderson's qui tam action would have been dismissed on the ground that it was "based on evidence or information the Government had when the action was brought." Id. This action was brought in 1990, two years after Mr. Anderson himself disclosed the information on which his claims are based to the FBI. See Anderson I, 52 F.3d at 813.
 
 
 17
 In 1986, Congress amended the provision barring recovery if the government had "information" before the suit was filed to provide that recovery is barred if the claim was based on "public disclosure" of information relating to the false claims, unless the relator was "an original source of the information." See False Claims Act Amendments of 1986, Pub.L. No. 99-562, 100 Stat. 3153 (1986), codified at 18 U.S.C. § 287, 31 U.S.C. § 3729, et seq. The amended version reads:
 
 
 18
 (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
 
 
 19
 (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.
 
 
 20
 31 U.S.C. § 3730(e)(4).
 
 
 21
 In Anderson I, the district court dismissed most of Anderson's claims for lack of jurisdiction, reasoning that the 1986 amendment to the False Claims Act did not apply retroactively, and that Anderson's claims were barred under the pre-1986 version of the statute. See Anderson I, 52 F.3d at 812. We reversed on the jurisdictional issue. See id. at 815. However, we did not hold in Anderson I that the 1986 amendment to the False Claims Act applies retroactively; instead, we "assume[d] without deciding that the amendment is prospective in its effect ...." See id. at 814. The only jurisdictional issue this court addressed in Anderson I was whether the relevant conduct for the purpose of its retroactivity analysis was Northern Telecom's submission of the allegedly false claims, which occurred prior to 1986, or Anderson's disclosure to the FBI of these allegedly false claims, which the court decided had occurred in 1988. See id. at 814-15. Concluding that the relevant conduct was Anderson's disclosure of the allegedly false claims in 1988, the panel held that, whether the 1986 amendment was retroactive or prospective only, Anderson's claims should not have been dismissed for lack of subject matter jurisdiction. See id. at 815.
 
 
 22
 In Hughes Aircraft Co. v. United States ex rel. Schumer, --- U.S. ----, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), the Supreme Court held that the 1986 amendment to the False Claims Act did not apply retroactively to conduct occurring before its effective date. See id. at 1874. However, the Court expressly declined to rule on whether the relevant conduct for purposes of its retroactivity analysis was the submission of a false claim or the disclosure of that claim to the government. See id. at 1876 n. 4. Thus, the Supreme Court's decision in Hughes left undisturbed this court's holding in Anderson I that the relevant conduct for purposes of determining the applicability of the 1986 amendment is the disclosure of information to the government.
 
 
 23
 In Anderson I, this court concluded that Anderson disclosed the allegedly false claims in 1988. See Anderson I, 52 F.3d at 813. Therefore, Anderson I dictates that the 1986 amendment applies. Under that amendment, jurisdiction depends on whether the action was based on "public disclosure" of information relating to the false claims. Wang v. FMC Corp., 975 F.2d 1412, 1416 (9th Cir.1992). Because NTI has presented no evidence that Anderson's action was based on public disclosure of information concerning the alleged defects, the district court was correct to exercise jurisdiction over Anderson's claims.
 
 III
 
 24
 For a qui tam action to survive summary judgment, the relator must produce evidence of "knowing presentation" of a claim that "is known to be false." Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir.1991). The statutory phrase " 'known to be false' ... does not mean 'scientifically untrue'; it means 'a lie." ' Wang v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir.1992). In the absence of proof of knowing fraud, "the common failings of engineers and other scientists are not culpable under the Act." Id.
 
 
 25
 To establish that NTI violated the False Claims Act, Anderson must demonstrate that NTI knew that its "SL-100" switches failed to meet the requirements of its "Scope Dial" contract with the military at the time NTI submitted claims for the switches. See Anderson I, 52 F.3d at 816. Anderson alleges that, at the time NTI submitted claims for its switches, the switches failed to meet the requirements of the Scope Dial contract in three respects: (1) the switches carried a level of current that exceeded the level permitted by the National Electrical Code ("NEC"), which Anderson claims was incorporated into the contract; (2) the switches failed to meet the "bit error rate" specified in the contract; and (3) the switches were not "state of the art," as the contract had warranted.
 
 
 26
 Anderson argues that the SL-100 switches failed to comply with contract specifications that incorporated the NEC because the frames on the switches carried an excessive level of current. However, Anderson has failed to raise a genuine issue of material fact as to whether NTI warranted that the internal wiring of its switches would comply with the provisions of the NEC. Although the Scope Dial contract referenced the NEC on some issues, it did not incorporate the entire NEC. Anderson has failed to demonstrate how the Scope Dial contract incorporated any NEC provisions that apply to the internal wiring of telephone switches.[1]
 
 
 27
 Anderson maintains that certain NTI employees, including NTI vice president Roger Klotz, stated that the SL-100 switches failed to meet NEC requirements concerning permissible levels of current. However, statements by Klotz and other NTI employees that the switches failed to comply with certain provisions of the NEC do not amount to evidence that NTI warranted to the military that the switches would comply with those provisions. Klotz never stated that he encouraged NEC compliance because he knew that such compliance was contractually required; rather, he explained that the NEC provided "an internal quality definition" used to "strive for perfection in quality."
 
 
 28
 Second, Anderson argues that the SL-100 switches failed to meet the 10-8 bit error rate specified in the contract. In support of this contention, Anderson relies on bit error rate testing conducted by NTI employee Thom Baker at Central Michigan University in 1985. However, the Central Michigan testing was conducted on a piece of equipment not available to NTI customers at the time of the Scope Dial contract. Moreover, tests performed by the military on switches sold by NTI confirmed that the switches met the bit error rate required by the contract. Consequently, Anderson has failed to raise a genuine issue of material fact as to whether the switches' bit error rate exceeded the rate specified by the Scope Dial contract.
 
 
 29
 Finally, Anderson contends that the SL-100 switches were not "state of the art," as required by the Scope Dial contract. The contract provides no definition of "state of the art." However, it does define the performance specifications that the switches must meet in a document titled: "AFCC Engineering Performance Specification for the SCOPE DIAL Digital Telecommunications System, AFCC-C-1189D." This document sets out detailed engineering specifications that provide a substantive basis for determining whether the SL-100 switch was "state of the art" for purposes of the Scope Dial contract. Given the absence of any genuine issue of material fact as to whether the switches failed to meet those specifications, Anderson's argument that NTI is liable under the False Claims Act for knowingly presenting claims for switches that were not "state of the art" fails.
 
 IV
 
 30
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 31
 AFFIRMED.
 
 
 
 **
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 96-3
 
 
 [1]
 Anderson argues that the Scope Dial contract incorporated a 1978 Air Force Technical Order, which in turn incorporated the relevant portions of the NEC. However, the technical order to which the Scope Dial contract refers was published in 1968, not in 1978